[Civ. No. 3565.    Second Appellate District, Division Two.—December 19, 1921.]

AGNES S. BECKER, as Administratrix, etc., Appellant, v. SUBMARINE OIL COMPANY (a Corporation), Respondent.

[1] LEASES—RENEWAL IN PERPETUITY—UNCERTAINTY—CONSTRUCTION. While not within the purview of the rule against perpetuities, leases which may have been intended to be renewable in perpetuity, if at all uncertain in that regard, will be construed as importing but one renewal.

[2] ID.—PERPETUAL RENEWALS—INTENTION OF PARTIES.—A clause in a lease providing for perpetual renewals at the option of the lessee is held to be enforceable when it appears that it was clearly the intention of the parties that the lessee should have that right.

[3] ID.—RIGHT OF RENEWAL IN PERPETUITY—LEASE CONSTRUED.—A clause in a lease as follows: "To have and to hold the same unto the party of the second part [the lessee], his heirs and assigns for the term and period of ten years from date hereof with the right of renewal for a further term of ten years at the end of such term, or at the end of any subsequent term for which it may be renewed," has the effect of giving the lessee the right of renewal in perpetuity.

[4] ID.—AGREEMENT OF LESSEE TO DRILL FOR OIL—LACK OF DILIGENCE—FORFEITURE—CONSTRUCTION OF LEASE.—Where the parties to a lease, which is given in consideration of the lessee's agreement to drill certain oil wells, consider the matter of forfeiture and agree as to what acts or omissions on the part of the lessee shall give the lessor the right to claim a forfeiture, and such lease further provides the character and amount of the drilling for oil that the lessee must do, and the lessee has fully complied with the express provisions of the lease, the court cannot usurp the right of the parties to contract by thereafter requiring the lessee to drill other and additional wells or to continue prospecting and developing the property for oil, under penalty of forfeiture.

[5] ID.—PROOF OF LACK OF DILIGENCE—ESSENTIAL EVIDENCE.—In the absence of any evidence as to the result of oil operations on adjacent premises, the extent of the subterranean oil reserves, its character and contour as affecting the question of drainage to and from the property in question, market conditions, the quan-

1. Perpetual lease or covenant to renew lease perpetually as violation of rule against perpetuities, note, 3 A. L. R. 498.

tity and quality of oil thus far produced, the prospects for further production as indicated, and the knowledge possessed by those expert in locating oil bodies that demands made upon the lessee in the maintenance of the wells already drilled or his diligence in operating them to secure the greatest possible production, proof that the lessee under such lease had drilled no wells other than those sunk during the first term of his lease was not sufficient to establish a lack of reasonable diligence.

[6] ID.—LACK OF REASONABLE DILIGENCE—WHAT CONSTITUTES—CERTAINTY.—The diligence required of the lessee under such a lease involves such a course of conduct upon his part as operators of ordinary diligence would pursue, having in mind the securing of the financial benefits sought by both lessor and lessee; and to warrant a forfeiture on the ground of lack of reasonable diligence in any case it must appear affirmatively from all the circumstances that the lack of diligence is both certain and substantial.

APPEAL from a judgment of the Superior Court of Santa Barbara County. Merle J. Rogers, Judge. Affirmed.

The facts are stated in the opinion of the court.

G. H. Gould and Harry W. T. Ross for Appellant.

John C. Benton for Respondent.

CRAIG, J.—In 1908 a lease of certain land in Santa Barbara County was made by Henry L. Williams, then the owner, to Thomas D. Wood. Plaintiff is the administratrix of the estate of Williams and defendant is the successor in interest by two assignments of Wood. The contention centers upon a clause of the lease which reads as follows: "To have and to hold the same period unto the party of the second part, his heirs and assigns for the term and period of ten years from date hereof with the right of renewal for a further term of ten years at the end of such term, or at the end of any subsequent term for which it may be renewed." It is further provided that the lessee shall drill certain wells upon the property and shall pay certain royalties to the lessor. These obligations were fulfilled by the lessee. But the complaint alleges that the defendant has not developed or prospected for oil upon any part of the premises for more than ten years nor farther east than six hundred feet from the westerly end of the premises leased. No express

provision of the lease is claimed by appellant to require such development, but she contends that an implied covenant exists which required the lessee to diligently prospect for oil upon the premises and that the evidence shows a failure to perform this implied agreement.

Before the expiration of the first ten-year period of the lease the lessee notified the lessor that it exercised its option of renewal. Before the expiration of the next preceding term the defendant served a written notice upon the plaintiff stating that defendant elected to exercise its "right of renewal for a further term of ten years." Respondent contends that this notice extended the term. Appellant claims that a provision for a renewal of a lease in perpetuity is against public policy and will be construed as providing for but one renewal and therefore the defendant is now holding over without right after the expiration of its renewal of term of ten years.

[1] It is true that while not within the purview of the rule against perpetuities, leases which may have been intended to be renewable in perpetuity, if at all uncertain in that regard, will be construed as importing but one renewal. This principle is announced in *Diffenderfer* v. *Board, etc.,* 120 Mo. 447 [25 S. W. 542], and *Syms* v. *Mayor of New York,* 105 N. Y. 153 [11 N. E. 369]. However, in each of these cases the language of the lease was sufficiently uncertain to permit of the application of the rule.

[2] On the other hand, a clause providing for perpetual renewals at the option of the lessee is held to be enforceable when it appears that it was clearly the intention of the parties that the lessee should have that right. (*Burns* v. *City of New York,* 213 N. Y. 516 [Ann. Cas. 1916C, 1093, 108 N. E. 77]; *Blackmore* v. *Boardman,* 28 Mo. 420.) This provision is also clearly stated in *Diffenderfer* v. *Board, etc., supra.* [3] In the instant case the language is so plain that no room is left for construction. The parties have made it clear that it was their intention that the lessee should have the right of renewal in perpetuity. The lessee exercised his right by giving the lessor a writen notice to that effect. This was all that was necessary to extend the lease for another term. (*Howell* v. *City of Hamburg,* 165 Cal. 172 [131 Pac. 130]; *Wiener* v. *Graff,* 7 Cal. App. 580 [95 Pac. 167].) [4] This lease contains the following stipulation as-

suring and at the same time limiting the right of the lessor to declare a forfeiture. "It is further agreed that the party of the second part shall complete three wells within 90 days from the date hereof and 10 wells within one year and the failure on the part of the party of the second part to comply with any of the terms of this agreement or an abandonment of work for sixty days shall, at the option of the first party, work a forfeiture of this lease and the parties of the first and third parts may upon a 30 days' written notice re-enter said premises and remove all persons therefrom." *Acme Oil & Mining Co.* v. *Williams,* 140 Cal. 681 [74 Pac. 296], goes no further than to hold that in an oil lease which provides for the drilling of certain wells, "There is an implied covenant not only that the wells be sunk, but that if oil is produced in paying quantities they will be diligently operated for the best advantage of the lessee and lessor." It does not state the proposition that there is an implied covenant to sink more wells than those specified. In the instant case the required number of wells were drilled within the period provided and no complaint is made that diligence was not shown in their operation. But it is contended that the law implies an agreement to add other wells in addition to those stipulated by the parties. *McIntosh* v. *Robb,* cited by appellant, is also a case where the lessee for a period of a year and a half had failed to operate the mine in dispute and to pay the royalties agreed upon, and the decision is squarely placed upon the ground of the defaults by the lessee in complying with express covenants.

Another case relied upon by appellant is *Indiana Oil etc. Co.* v. *McGrory,* 42 Okl. 136 [140 Pac. 610]. The lease there is construed as containing no agreement as to how the development was stipulated to be done by the lessee beyond one that drilling should "commence within 90 days from the date of said lease." The measure of the diligence to be used by the lessee was not agreed upon by the parties and in the absence of such an agreement an implied covenant to use reasonable diligence in the development of the property mentioned was held to exist. But where, as in the case at bar, the parties have defined the measure of diligence to be required of the lessee, the case last referred to is not in point.

This lease under consideration by us made definite provision for the development work which the lessee is required by its terms to do. The parties left nothing to implication. To remove all doubt in that regard they have also made a clear stipulation concerning the conditions under which there may be a forfeiture of the lease. Where it appears, as it does here, that the parties considered the matter of forfeiture and agreed as to what acts or omissions on the part of the lessee should give the lessor the right to claim a forfeiture, and where it further appears that their minds have met upon the character and amount of the drilling for oil that the lessee must do, it would be usurping the right of the parties to contract for the court to insert other requirements and provisions concerning these important considerations. The court found that the defendant "has fully performed the covenants by said lessee to be performed," and it is not claimed that there was a default in the matter of compliance with any express covenants. But it is contended by appellant that the evidence is insufficient to sustain this finding because of alleged default in the performance of an implied covenant to drill other wells than those specified in the lease and generally to continue prospecting and developing the property for oil. In *Phillips* v. *Hamilton*, 17 Wyo. 41 [95 Pac. 846], and *Gadbury* v. *Ohio & I. Consol. Natural & Illuminating Gas Co.*, 162 Ind. 9 [62 L. R. A. 895, 67 N. E. 259], the court held an implied covenant to exist of the character contended for by appellant, but these were cases in which the parties themselves had done nothing more than to stipulate that the lessee would prosecute the work of development with reasonable diligence and had left for implication the measure of diligence to be used in carrying out such agreements.

[5] Proof that the lessee had drilled no other wells than the ten sunk during the first term is not sufficient to establish a lack of reasonable diligence. As a net result of consideration of the cases which hold that, in the absence of express and definite stipulation as to the measure of diligence, an implied covenant exists demanding reasonable diligence in the development of the premises leased, it may be fairly said, in determining whether or not other wells should have been drilled, consideration must be given to a number of facts regarded collectively. Some of these are:

the result of oil operations on adjacent premises; the extent of the subterranean oil reservoir; also its character and contour as affecting the question of drainage to and from the property in question; market conditions; the quantity and quality of oil thus far produced; the prospects for further production as indicated and the knowledge possessed by those expert in locating oil bodies; the demands made upon the lessee in the maintenance of the wells already drilled and his diligence in operating them to secure the greatest possible production. The record contains no information concerning many of these important considerations. Leases are intended for the benefit of both parties. The lessee has a right to regard his own interest as well as that of the lessor. [6] In short, the diligence required of the lessee involves such a course of conduct upon his part as operators of ordinary diligence would pursue having in mind the securing of the financial benefits sought by both lessor and lessee. To warrant a forfeiture upon this ground in any case it must appear affirmatively from all the circumstances that the lack of diligence "is both certain and substantial." (*Brewster* v. *Lanyon Zinc Co.*, 140 Fed. 810 [72 C. C. A. 213].)

The transcript shows that the defendant company had expended about one hundred thousand dollars upon the property and that the wells never produced any more oil than enough to pay expenses; no dividends had ever been paid; that its wells had become impaired through the accumulation of sand and the company effectually relieved these conditions; that it suffered misfortunes in the loss through the elements of its wharves and most of its wells; that it made one attempt to obtain oil in the eastern part of the territory (in which appellant especially insists exploration should have been carried on) which resulted in failure; and that another party made a like attempt with similar fruitless results near the eastern line. We cannot say that the evidence presented would not justify the trial court in concluding that there had been no breach of covenant even assuming the existence of the implied one contended for by appellant and in further finding that there had been no default on the part of lessee warranting forfeiture.

The judgment is affirmed.

Finlayson, P. J., and Works, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on February 16, 1922.

All the Justices concurred, except Richards, J., *pro tem.,* who dissented.

Lennon, J., was absent.