GRAY, Appellant, vs. STADLER and another, Respondents.

*May 16—September 13, 1938.*

*Wendell McHenry* of Waupaca, for the appellant.
*Lloyd D. Smith* of Waupaca, for the respondents.
The following opinion was filed June 21, 1938:

ROSENBERRY, C. J.   Almeda M. Hicks, on July 1, 1912, leased to the plaintiff lot 2 in Lake View Park of the town of Farmington, Waupaca county.   That part of the lease material here provided:

"The premises to be used only for dwelling and summer cottage purposes, and not for the sale of merchandise or any other commodity.   The party of the second part is hereby given an easement for ingress and egress to said premises over and along what is known as Hicks avenue.

"To hold for the term of fifteen years from this date with privilege of renewals for similar periods, for the annual rent of ten ($10) dollars to be paid in even and equal portions on the first day of July in each year, the first payment to be made on the date of this instrument, the receipt of which is hereby acknowledged."

Thereafter, William Hicks, who was the successor in title to Almeda M. Hicks, entered into a lease with the plaintiff covering lots 2 and 3 of said Lake View Park.   The second lease contained the same restrictions with respect to the use of the property as contained in the first lease.   The habendum clause is as follows:

"To hold for the term of fifteen years from this date for the annual rent of twenty ($20) dollars, to be paid in even and equal portions on the first day of July in each year, the first payment to be made on the date of this instrument, the receipt of which is hereby acknowledged, *also providing privilege of renewals of like periods.*"

The part italicized was inserted with pen and ink.   Apparently some doubt arose with respect to the italicized pro-

vision and a supplemental agreement was entered into on September 4, 1923, as follows:

"The renewal lease as dated September 1, 1923, as executed in order to cover the addition of another lot adjoining original lot, was intended to convey the same conditions as applied on said original lot as to length in term of occupancy, with the same extension in periods of fifteen years, optional with the lessee, similar in every way to the original lease as dated July 1, 1912, excepting the increased rental for such additional lot.

"It was and is fully understood and agreed that the interlining of such provision, unintentionally omitted by me the lessor, was done in my presence, with my full acceptance and before said lease was signed and witnesseth.

"[Signed] WM. HICKS.
"HENRY WILUND.
"J. ROLLIN GRAY."

On June 12, 1929, William Hicks conveyed all of his right, title, and interest in the premises involved to the defendants, L. J. Stadler and Marietta Stadler.

The plaintiff alleges in her complaint:

"That the defendants have informed her that they will refuse to renew said lease except at an exorbitant rental therefor. That the defendants have claimed that said lease is not renewable upon the same terms and conditions as set forth in the second lease referred to heretofore and that it is entirely within the power of said defendants to fix the rental at any sum they may see fit. . . ."

Plaintiff further alleges:

"That it was the intention of all of the parties concerned at the time both the first lease was executed and the second lease was executed that said leases would be renewable for an additional period of fifteen years for the same rental, to wit, the sum of twenty ($20) dollars each year and as specified in the second lease."

Each of the leases contained the following clause:

"And the covenants herein contained shall bind the parties mutually, and the respective heirs, executors, administrators, and assigns."

The trial court first held that the lease executed on September 1, 1923, was not a renewal of the lease executed July 1, 1912, and that the plaintiff was entitled to one renewal of the lease for fifteen years from the expiration of the fifteen-year term mentioned in Exhibit B; that Exhibit C, the supplemental agreement, simply established that all of the interlineations made in Exhibit B were made before the final execution of the lease. The court also raised the question whether the right of renewal could be exercised by plaintiff's heirs in case of her death. After argument the court held that the covenant of renewal was a personal covenant, and that upon giving the proper notice, the plaintiff was entitled to a renewal every fifteen years during her life;—

"that in the event of plaintiff's death during the period of said lease or any renewal thereof, then the heirs, executors, administrators, or assigns shall have the right of the plaintiff in said lease, excepting the right of renewal, and shall be bound by the covenants as to the payment of rent and other covenants until the expiration of the period."

This holding of the court was based upon the following considerations as stated in the court's decision:

"From the surrounding conditions and circumstances, and from the lease itself, considered all and every part thereof, it is believed that it was the intent and purpose of the parties that the rental of $20 a year was only part of the consideration. The understanding was Mrs. Gray would build a substantial cottage and the premises should only be used for residence and summer cottage purposes, and the lessor expressly gave up the right to claim the stone foundation to be built under the cottage. The lessee might well trust Mrs. Gray not to injure her own or adjoining property by letting it to notorious or objectionable tenants, but well might not so trust her heirs or assigns, whoever they might be."

Upon this appeal it is contended on behalf of the plaintiff that the lease executed September 1, 1923, expressly provides and conclusively shows an intention to create a right

of perpetual renewal in the plaintiff, her heirs and assigns, and that is the principal question here for decision. On behalf of the defendants it is contended, first, that the plaintiff is entitled to but one renewal, and, second, that the contract is a personal one and not for the benefit of her heirs and assigns. Other contentions were made which in the view we take of the case it is not necessary to state here.

It is well established that perpetuities are not favored in the law, and that an instrument will not be construed as creating a perpetuity unless the intention to do so is clear and plainly manifest. *Drake v. Board of Education* (1907), 208 Mo. 540, 106 S. W. 650, 14 L. R. A. (N. S.) 829; *Brush v. Beecher* (1896), 110 Mich. 597, 68 N. W. 420; and *Winslow v. Baltimore & Ohio R. R.* (1903) 188 U. S. 646, 23 Sup. Ct. 443, 47 L. Ed. 635.

There is nothing in the document, parts of which have already been quoted, that indicates that the parties had in mind the creation in the lessee of a right in perpetuity. The argument that the lease so provides is based upon the fact that the term "renewals" is used instead of renewal and the word "periods" instead of period. It is considered that these facts are not sufficient to take the case out of the general rule, there being nothing to indicate that either of the parties had in mind the creation of a perpetual right. Within the doctrine of the cases cited the language is not sufficient to require a determination that the parties so intended. The plaintiff is therefore entitled to one renewal for a period of fifteen years without the right to a renewal thereafter.

Is the covenant for renewal a personal one? We find nothing in the instrument which requires a court to so hold. The language of the instrument is that which is ordinarily and customarily used where the covenants are intended to be for the benefit of the heirs and assigns of the parties. The trial court was of the view that the surrounding circumstances required the court to hold that the lessor was not

willing to trust the heirs or assigns of Mrs. Gray as lessees of the property while he was willing to trust her. The language of the lease being plain and by its terms for the benefit of her heirs and assigns, it is considered that the language of the lease cannot be so limited. To so hold is really to reconstruct the contract rather than construe it. It is therefore held that the covenant is for the benefit of the lessee, her heirs and assigns if the lease should be validly assigned as provided by its terms.

*By the Court.*—The judgment appealed from is modified so far as it holds that the right of plaintiff is personal and does not inure to the benefit of her heirs, executors, administrators, and assigns. The judgment in all other respects is affirmed, the plaintiff to recover her costs in this court.

NELSON, J. (*dissenting*). In my opinion, the conclusions of the majority of the court are not sound and I am therefore impelled to state the reasons for my dissent. There is no dispute as to the facts. The only question which has provoked a disagreement is whether the language of the leases, reasonably construed, gave to the lessee, her heirs, executors, administrators, or assigns the right, at her or their respective options, to renew the lease every fifteen years. Under the lease dated July 1, 1912, Mrs. Hicks, as lessor, leased to Mrs. Gray, as lessee, lot 2, in Lake View Park, in the town of Farmington, Waupaca county. A clause of that lease, so far as here material, provided:

"To hold for the term of fifteen years from this date with *privilege of renewals for similar periods.* . . ."

On September 1, 1923, William Hicks, who had succeeded to the ownership of said lot 2, and other lots in the same plat, leased said lot 2 and lot 3, in Lake View Park, to Mrs. Gray. That lease contained the following clause:

"To hold for the term of fifteen years from this date for the annual rent of twenty ($20) dollars, to be paid in even and equal portions on the first day of July in each year, the

first payment to be made on the date of this instrument, the receipt of which is hereby acknowledged, *also providing privilege of renewals of like periods."* (The italicized language was written into the lease with pen and ink.)

Both leases contained the following provision:

"And the covenants herein contained shall bind the parties mutually, and their respective heirs, executors, administrators, and assigns."

On September 4, 1923, William Hicks signed and delivered to Mrs. Gray the following declaration:

"The renewal lease as dated September 1, 1923, as executed in order to cover the addition of another lot adjoining original lot, was intended to convey the same conditions as applied on said original lot as to length in term of occupancy, with the same extension *in periods of fifteen years,* optional with the lessee, similar in every way to the original lease as dated July 1, 1912, excepting the increased rental for such additional lot.

"It was and is fully understood and agreed that the interlining of such provision, unintentionally omitted by me the lessor, was done in my presence, with my full acceptance and before said lease was signed and witnesseth."

The trial court was of the view that Mrs. Gray was entitled to a renewal of the September 1, 1923, lease, every fifteen years so long as she should live, but that such right was personal to her and did not inure to the benefit of her heirs, executors, administrators, or assigns. The majority of this court is of the opinion that the renewal agreement is not personal to Mrs. Gray but that she, or her heirs, executors, administrators, or assigns are entitled to but one renewal for a period of fifteen years.

Much of the argument in the briefs relates to the question whether the right to renewals of the lease was personal to Mrs. Gray, as found by the trial court. I agree with the majority that the agreement for renewals was not personal to Mrs. Gray. The question whether the language of the leases gave to Mrs. Gray and to her heirs, executors, admin-

istrators, or assigns, at her or their option, the right to perpetual renewals, was thus decided by the majority:

"It is well established that perpetuities are not favored in the law, and that an instrument will not be construed as creating a perpetuity unless the intention to do so is clear and plainly manifest. *Drake v. Board of Education* (1907), 208 Mo. 540, 14 L. R. A. (N. S.) 829; *Brush v. Beecher* (1896), 110 Mich. 597, 68 N. W. 420; and *Winslow v. Baltimore & Ohio R. R.* (1903) 188 U. S. 646, 47 L. Ed. 635.

"There is nothing in the document, parts of which have already been quoted, that indicates that the parties had in mind the creation in the lessee of a right in perpetuity. The argument that the lease so provides is based upon the fact that the term 'renewals' is used instead of renewal and the word 'periods' instead of period. It is considered that these facts are not sufficient to take the case out of the general rule, there being nothing to indicate that either of the parties had in mind the creation of a perpetual right. Within the doctrine of the cases cited the language is not sufficient to require a determination that the parties so intended. The plaintiff is therefore entitled to one renewal for a period of fifteen years without the right to a renewal thereafter."

It is almost universally held by the courts of this country and those of England that perpetual leases and leases containing a covenant for perpetual renewals are not violative of the rule against perpetuities or of statutes limiting the period during which the absolute power of alienation may be suspended. See extended annotation in 3 A. L. R. p. 498. While perpetual leases are not favored by the courts, such leases are not void or unenforceable. It is of course uniformly held that a general provision in a lease providing for a renewal upon the same terms, covenants, or conditions, as are contained in a lease, will be construed as providing for but one renewal. See annotation in 14 A. L. R. p. 948. Leases providing for perpetual renewals at the option of the lessee are not against public policy. Whether a lease provides for perpetual renewals or for a single renewal, is of

course to be determined by the intention of the parties as expressed in the lease. Courts do not look with favor upon perpetual leases, and therefore do not ordinarily construe leases to be such, unless they contain language clearly manifesting such intention. If, however, a given lease clearly provides for perpetual renewals at the option of the lessee, then it should be construed as a perpetual lease and given full force and effect. The law is settled that if the parties to a lease have clearly expressed their intention perpetually to renew, it will be so construed and enforced. *Thaw v. Gaffney,* 75 W. Va. 229, 83 S. E. 983, 3 A. L. R. 495; *Vokins v. McGhaughey,* 206 Ky. 42, 266 S. W. 907, 39 A. L. R. 275; Annotation, p. 279; *Hoff v. Royal Metal Furniture Co.* 117 App. Div. 884, 103 N. Y. Supp. 371, affirmed in 189 N. Y. 555, 83 N. E. 1128; *Blackmore v. Boardman,* 28 Mo. 420; *Copiah Hardware Co. v. Johnson,* 123 Miss. 624, 86 So. 369; *Becker v. Submarine Oil Co.* 55 Cal. App. 698, 204 Pac. 245; *Burns v. City of New York,* 213 N. Y. 516, 108 N. E. 77. See also numerous English cases cited and digested in the annotations found in 3 A. L. R. 498, and 39 A. L. R. 279. The rule is thus stated in 16 R. C. L. p. 887, § 391:

"If a lease expressly and clearly provides for more than one renewal, it will be given that effect. . . . The generally accepted view, however, is that a provision clearly giving the lessee and his assigns the right to perpetual renewals is valid in the absence of some statutory prohibition, and will be so construed and enforced by the courts."

and in 35 C. J. p. 1017, § 144 (b):

"Perpetual leases are not favored in the law, nor are covenants for continued renewals tending to create a perpetuity, and the rule of construction became settled at an early date that a covenant for renewal or for an additional term should not be held to create a right to repeated grants in perpetuity, unless by plain and unambiguous terms the parties have ex-

pressed such intention. Nevertheless, where the intention to create a right of renewal in perpetuity is clearly and unambiguously expressed, the obligation so created is valid and enforceable."

It is clearly the law that perpetual leases are not void, are not against public policy, and are not unenforceable. The intention to create a perpetual lease must of course be clear. In my opinion, the two leases and the written declaration made by William Hicks subsequent to and in explanation of the lease dated September 1, 1923, are so clear and plain that there is no room for construction. It is my opinion that the parties clearly intended that Mrs. Gray, her heirs, executors, administrators, or assigns should have the right to as many renewals of the leases for periods of fifteen years as she or they respectively might desire. The language "with privilege of renewals for similar periods," "also providing privilege of renewals of like periods," and "the renewal lease as dated September 1, 1923, . . . was intended to convey the same conditions as applied on said original lot as to length in term of occupancy, with the same *extension in periods of fifteen years,* optional with the lessee, similar in every way to the original lease as dated July 1, 1912, excepting the increased rental for such additional lot," should not, in my opinion, be casually disregarded. The majority of the court is of the view that the language providing for "renewals for similar periods," "renewals of like periods," and "extension in periods of fifteen years," is not sufficient to take the case out of the general rule that perpetual leases are not favored. The language of the leases and the declaration is laymen's language, and in my opinion, it clearly, expressly, unambiguously, and unequivocally gives to the lessee and to her heirs, executors, administrators, or assigns, at her or their option, the right to renewal leases for periods of fifteen years so long as she or they shall desire to

occupy the land and pay the specified rent.   I do not think the plain language of the leases and the declaration of the lessor should be held to be so meaningless.

I am authorized to state that Mr. Justice FOWLER concurs in this dissent.

The following memorandum was filed September 13, 1938:

PER CURIAM (*on motion for rehearing*).   Motion for rehearing denied with $25 costs because the motion was not filed within the time required by Rule 37.