Carter Oil Company, Appellant, v. Clara Dees et al., Appellees.

Term No. 49023.

CULBERTSON, J., dissenting.

Opinion filed April 29, 1950. Released for publication May 29, 1950.

FRED W. FILE, of Mattoon, and ACTON, ACTON, BALD-WIN & BOOKWALTER, of Danville, for appellant; WALTER DAVISON and W. M. ACTON, of Danville, of counsel.

WILL P. WELKER and JOE DEES, both of Vandalia, for appellees.

MR. JUSTICE SCHEINEMAN delivered the opinion of the court.

This is an appeal from a judgment of the circuit court of Fayette county, in favor of appellees, Clara Dees, George W. Durbin, Newell Mabry, C. J. Metzger and Will P. Welker (hereinafter called defendants), and against appellant, the Carter Oil Company, a corporation (hereinafter called plaintiff).

The action was filed by plaintiff and against the named defendants under the Declaratory Judgment Act. The plaintiff alleged that it, as lessee, and defendants as lessors, have a certain oil and gas mining lease in force as to certain premises containing 40 acres. That plaintiff has drilled four producing wells on said premises, in 1939 and 1940, with an initial production from about 100 to 200 barrels per day at each well. That the production has steadily declined until, when suit was filed, the rate was six barrels per day at well No. 3, and but ten or eleven at the others. That the decline would continue until economically productive limits would be reached and the wells would be plugged and abandoned.

It is further alleged that the decline in production is not because of substantial depletion of the oil reserves under the tract, but rather is the result of depletion and exhaustion of the gas energy originally in solution in the reservoir. That there is now an approved, established and accepted procedure in general use in the oil producing industry, whereby dry gas is injected into the producing formations through wells conditioned for that purpose, reactivating the reservoir, thereby prolonging its productive life, and substantially increasing the amount of oil recovered.

Plaintiff desires to adopt this procedure, and at its own expense, to convert the said No. 3 well into a gas input well, and asserts this is in accord with approved operating practices, and would be the plan adopted by a prudent operator having in mind the best interests of the lessors (mineral owners) as well as the lessee.

The defendants answered admitting that a controversy exists between the parties "involving the construction of a certain oil and gas lease and the respective rights and privileges of the parties thereunder, and . . . is properly the subject of an action under the declaratory judgment act."

The answer admitted the curtailment in production as alleged in the complaint, but denied that this would continue at the same or an accelerated rate, and alleged the No. 3 well would continue in production until about 1960, while the proposal of plaintiff would result in driving off substantial quantities of oil belonging to defendants. It is not denied that the total oil recovered would be substantially greater under the proposal, but it is still denied that a prudent operator would adopt such a plan. A replication was filed which did not substantially enlarge the factual questions.

No evidence was introduced upon the trial, but it was stipulated the following are the facts:

The plaintiff has correctly stated the general situation, the dates and production of the various wells, and that they will continue to decline. No. 3's present maximum rate of six barrels per day will also decline, but it will be commercially productive until at least 1959. The decline in all the wells is the result of exhaustion of gas pressure, rather than actual depletion of oil reserves. If the proposed repressure plan is put into effect, it will result in the ultimate recovery of a considerably greater quantity of oil from the remaining three wells than can be obtained from all four under primary production operations.

The plaintiff has leases on other lands adjacent to defendants' in which the latter have no interest. The No. 3 well is an off-set, opposite wells to the west and south operated by plaintiff.

It is agreed that a prudent operator, planning a repressuring program, must select wells for gas input

in such fashion as to accomplish substantial equality of benefits as between owners of mineral rights within the limits of the project, and have in mind their as well as his own best interests. This principle was given consideration in selecting defendants' No. 3 well.

As part of its repressuring program in this area, the plaintiff has converted one of its producing wells on lands not owned by defendants but near the northeast corner of defendants' tract, into a gas input well, and has injected gas therein; this has caused and will continue to cause oil to migrate onto defendants' forty acres, from the north, east and northeast.

If the No. 3 well is converted to gas input, as proposed, the resulting pressure will cause all the recoverable oil under five of defendants' forty acres to migrate onto adjoining lands in which they have no interest. The aggregate amount will be not less than 5199 nor more than 7025 barrels. The oil migrating onto defendants' property from the other direction will be substantially equal to that which is so displaced. The total oil recovered from this leasehold will be increased not less than 14,437 barrels, and may be as much as 34,800 barrels. At current prices for oil, this program assures defendants of a net cash gain at a minimum of $4,999 and a maximum of $12,050. This is over and above all that they can obtain by continued primary operations. There is no known practical method of repressuring which will not cause migration of oil in substantial quantities.

It was further stipulated that, upon the basis of the above facts, fair, credible and fully qualified expert witnesses would testify under oath that a reasonably prudent, competent and experienced operator, having in mind the best interest of both the lessor and the lessee, would convert the said well No. 3 into a gas input well as proposed by the plaintiff. It is agreed the case shall be considered as if such witnesses had so

testified, with no testimony to the contrary, but that the decision of ultimate facts or conclusions of law remains for the court.

The trial court, in declining to enter a declaratory judgment in favor of plaintiff, found that the plaintiff has no right, over the objections of defendants, to convert a well on their premises to a gas input service well; that, as was stipulated, said well, if not converted will continue to be commercially productive until at least 1959; and if so converted, a substantial quantity of oil which can be recovered by primary methods, will be irretrievably lost to defendants.

It is contended by plaintiff on this appeal, that the court should have held these latter facts were immaterial, for the reason that, under the proposed plan, substantially the same amount of oil would migrate to defendants' premises as would migrate therefrom, and that there would be actually a net monetary gain to defendants. Plaintiff also contends that it has a right, under the standard form of oil lease used by these parties, to operate the premises as a prudent, competent and experienced operator, having in mind the best interest of both lessor and lessee, and the proposal meets this test, therefore the incidental and unavoidable migration of oil cannot be considered legal waste.

The defendants deny the correctness of .the foregoing, on the ground that they have title to the oil under the land, that plaintiff has no right to use a repressure program on their land without their consent; that plaintiff has a duty under the implied obligations of the lease to maintain the off-set well in order to prevent drainage of this oil onto adjoining lands, at least so long as it can be done by primary operations on an economically productive basis, and especially where the adjoining wells across the line are also operated by the same lessee.

All of the argument of appellees appears to ignore the stipulated fact that drainage onto their premises from other pressure wells will substantially equal that drained off.

The lease before this court is the commonly used form which gives the plaintiff the right to mine for oil and gas on the premises, for a one-eighth part of all oil produced and saved from the premises as royalty, and one-eighth of the gross proceeds for gas from wells where gas only is found. No attempt is made to define any method of operation, nor to restrict the quantity to be removed.

 Such a lease is a contract, subject to the same rules of construction as any other contract. *Minerva Oil Co. v. Sohio Petroleum Co.,* 336 Ill. App. 372.

 In construing this contract, nothing is accomplished by the mere assertion that lessors have title to the oil in place upon their lands. Their ownership is conceded. But the owner of any property, including minerals in place, may by contract confer upon another the right to remove and dispose of the property. The owners have done so in this case.

A dispute has arisen concerning the rights and obligations of the plaintiff under this contract, and the court has been asked to construe it. This cannot be done by adverting to defendant's title, or to its precise nature and extent. The question is: what rights did the admitted owners confer upon the lessee as to the oil they own; and what are the lessee's obligations?

 Many cases have been before the courts involving oil migration or "drainage," and frequently relief has been granted to lessors. We have examined decisions from all the major oil producing states, and find that the granting of such relief is not based upon the mere fact of lessors' title to oil, but upon the principle that the operations were contrary to the manifest intention of the parties, in that they *defeated the prime*

455

*purpose of the lease, viz.,* the royalty reserved to the lessors. We conclude that in this case, it is the duty of the court to decide whether plaintiff's proposed operations tend to defeat the purpose of the lease, or are within the scope of the rights granted to lessee. For this reason, we hold that appellees' assertions of title are irrelevant.

The use of repressuring is based upon these facts of common knowledge: oil in place in a structure cannot be recovered without pressure, which must drive the oil laterally to the well and vertically through the casing. In the past, many fields have had to be abandoned because of exhaustion of the available pressure, even though large quantities of oil remained in the ground. Modern science has developed methods of repressuring, one of which is the process of taking gas from a producing well, after it has lifted oil, then pumping the dry gas back through an input well to maintain the pressure and go through another cycle of production, thereby greatly increasing the quantity of recoverable oil.

██ The mere fact that this method of production is modern is no reason to prevent its use by a rule of law. It is true the contract of the parties does not specifically provide for this process, but neither does it specify any other process. The contract being silent as to methods of production, it must be presumed to permit any method reasonably designed to accomplish the purpose of the lease; the recovery of the oil and the payment of the royalty. The court would violate fundamental principles of construction to insert by implication a provision that lessee is limited to production of such oil as can be obtained by old fashioned means, or by so called ''primary operations.'' See dicussion of repressuring in *Utilities Production Corp. v. Carter Oil Co.,* 72 F. (2d) 655 (CCA Okla.).

A more complex and difficult problem is presented in this case by reason of these facts: Well No. 3 is an off-set well affording protection to lessors from drainage which would otherwise occur, by which oil would migrate to producing wells on other tracts of land operated by plaintiff. Appellees contend this fact is conclusive under existing principles of law. It becomes necessary, therefore, to consider these principles as applied to the stipulated facts.

We find no reported case from any state court involving the direct application of the principles to a repressuring program, and only one case (hereafter mentioned) in the federal courts. The problem before us is therefore somewhat novel.

A great many cases are reported in which the lessors sought to compel more intensive and diligent operations by the lessee, especially as to the installation of protection wells. In many of them the courts granted relief to the lessors, stating that the lessee must act in good faith, or must use due diligence, or that he is obligated to act as a reasonably prudent operator, having in mind the interests of both the lessor and lessee. See collected cases in notes, 19 A. L. R. 437, and 60 A. L. R. 951; also the authoritative analysis in Summers, Oil and Gas, Vol. II (Perm. Ed.) p. 309 *et seq.*

In this case, the situation is different in that the lessee is seeking to attain maximum production, while the lessors object, even though they admit the result would be far more oil for both parties. They argue that the migration of oil from the off-set well is decisive regardless of other conditions. The argument is novel, not only in the position that the court should consider only one condition in determining whether the operation is reasonable, but also in taking a principle of law designed to secure diligence in development of a field, and asserting it as a reason to limit and curtail productive operations.

457

■ ■ As heretofore applied, the rule requiring prudent operations does not alter the contract of the parties. The courts often have said, in substance: "the obligation to provide protection wells will be implied in the contract." Where applied, this rule prevents frustration of the fundamental purpose of the contract, and gives effect to the intention of the parties, as expressed in the lease, without depriving the lessee of any vested rights, since he also shares in the increased production.

■ Courts do not, and cannot, undertake to make a new contract for the parties. An implied provision, such as the above, is only asserted to carry out the manifest intention of the contract.

■ ■ For this reason, there cannot be an absolute and unqualified obligation to establish an off-set well, or any other well, regardless of circumstances. All the pertinent conditions must be considered by the court. *Becker v. Submarine Oil Co.,* 55 Cal. App. 698, 204 Pac. 245. The lessee is not absolutely bound to prevent all drainage where "the lessor suffers no substantial pecuniary loss from such drainage." *Eastern Oil Co. v. Beatty,* 71 Okla. 275, 177 Pac. 104. Long ago it was said in *Doddridge County Oil & Gas Co. v. Smith,* 154 Fed. 970, that the law must protect both parties to the lease, and must not devise a rule in favor of lessor which would take from lessee "his vested right acquired by assumption of all risk and expenditure of large sums of money in the search for and production of the products and the finding thereof."

■ ■ By reference to the fundamental principles of law involved, it should be apparent that the fact the well in question is an off-set well, does not preclude its discontinuance automatically, without reference to other facts. We hold the basic rule remains: the lessee should do what a prudent operator, using reasonable diligence would do, having in mind the best interests

of the lessor and the lessee. As this rule has been applied in determining whether an operator is obliged to *establish* an off-set well, so it should be applied in deciding whether he shall be required to *maintain* it, or be permitted to discontinue it.

This application of the general principle seems to have been recognized in the only reported case involving the right to convert a well to gas input. *Ramsey v. Carter Oil Co.*, 74 F. Supp. 481, affirmed in 172 F. (2d) 622. Counsel disagree as to the precise holding therein. The case was heard on evidence, not on stipulation, and, while the court might have found from the weight of evidence that the proposal met the test of what a reasonable, prudent operator would do, having in mind the interests of both lessor and lessee, the court found it did not meet that test in the case before it. Among other things the lessee offered testimony that it proposed to create another input well off the premises of the lessors which would cause oil to migrate onto his premises and equalize that which he lost. The court rejected this as ''conjecture'' and gave it no weight in the decision.

In the case before us, by reason of the operator's methods, the migration of oil onto defendants' premises will substantially equal that drained off. This can only mean that any difference would be negligible. We cannot reject this as mere conjecture, for it is stipulated to be a positive fact.

With this fact stipulated, the proposed operation cannot be said to deprive the appellees of any portion of their one-eighth royalty, and they suffer no pecuniary loss in any sense. The operator has diligently and effectively developed the property, and now has a vested right to complete the extraction of oil, provided it does so in the manner of a fair and prudent operator. The law cannot logically assert that, to be fair and prudent, the operation must give the lessor more than

459

his contractual rights, that is, more than one-eighth of the oil under his land.

 There being no factor of detriment, deprivation or pecuniary loss resulting to lessors, all the stipulated conditions point to the reasonableness and prudence of the operation, and there remained no condition for the court to weigh and consider as a factor militating against that conclusion. There is nothing to contradict the testimony that the method of operations under the stipulated facts is reasonable, prudent, and fair to all the parties, therefore there is no reason in law to prevent it. The court should have entered a judgment accordingly.

The judgment is reversed and the cause remanded with directions to enter a declaratory judgment as prayed.

*Reversed and remanded.*

BARDENS, P.J., concurs.

CULBERTSON, J., dissents. I am unable to agree with the views expressed in the majority opinion and most respectfully dissent therefrom.

It is conceded by the parties, and is obviously the law, that under the lease title to oil and gas in the land remains in the lessors, and that the lessee is merely granted the right to go upon the premises to produce the oil and gas, and when the lessee's operations terminate the lessors still own all the oil and gas which is left upon the land owned by them (*Central Pipe Line Co. v. Hutson,* 401 Ill. 447). It is also conceded that lessee's right to produce is subject to expressed and implied covenants of the lease, and also, that one implied covenant is that the lessee will reasonably develop the premises and continue to operate so long as the enterprise can be carried on at a reasonable profit (*Daughetee v. Ohio Oil Co.,* 263 Ill. 518).

The basic conflict in the instant case, however, is in the manner of determination of whether under the

460

terms of the lease, with a view to prudent operation and the rights of the lessors, oil may be driven from the land of the lessors, over the objection of the lessors, through a gas repressuring system, irrespective of the question of incidental benefit from collateral or adjoining repressuring systems.

In volume 2 of *Summers Oil and Gas* (Perm. Ed.), sec. 414, p. 379, the author, in his monumental work on oil and gas, in discussing the basic issue states, "But the ultimate issue, that is, whether lessee has exercised reasonable diligence in development and protection of the land, must be decided by reaching a conclusion from all the facts presented. It is within the province of the Court or jury to make this conclusion, but the opinions of those skilled in such matters are of great value to the Court or jury. . . . The final decision as to whether the lessee has exercised reasonable diligence in drilling additional or protection wells, whether such diligence be measured by the reasonably prudent operator test or by the good faith judgment of the lessee, is a question of fact for the jury." The ultimate fact as to whether or not prudent operation requires repressuring is, in the last analysis therefore, a question for the court.

The court below was obviously guided by the case of *Ramsey v. Carter Oil Co.*, 74 F. Supp. 481. In that case the facts were substantially the same as in the instant case and the court, although the overwhelming weight of expert testimony called for repressuring as a prudent means of developing the leased premises, held as a matter of law that the operation as proposed through repressuring could not be undertaken over objection of the lessor, and likewise concluded that it violated the implied covenant of the lease to prevent drainage of oil onto adjoining lands. The court in the *Ramsey* case stated specifically (at page 482), "The well now proposed to be made a gas re-

pressuring well is one of the offset wells drilled by the defendant to prevent drainage in accordance with defendants duty to plaintiff. It would seem obvious that to abandon this well or close it down or to reconvert it into a repressuring well will remove from production a well drilled for and furnishing offset protection against drainage so long as oil is produced from this and offset territory. Defendant must prevent drainage and the moment it changes an offset well into a nonproducing well it violates that duty.'' The court further states in that opinion (at page 482), ''The defendant has only one right under its lease and that is to remove the oil according to approved methods for the benefit of itself and its lessor. It has no right to drive it from plaintiff's land by any method. To do so is clearly a trespass upon and a violation of plaintiff's right and title to the oil in place. . . . It is not a question of whether that oil can otherwise be taken from the soil. Plaintiffs own the oil and they have a right to have it left in place and to be removed only by methods which will not deprive them of it. Any conversion of oil by the lessee by driving it away or otherwise is a clear invasion of plaintiff's rights.'' After discussing the fact that the lessor may actually benefit from the proposed repressuring method the court goes on to say (at page 483), ''That may be well and true, but the oil that will migrate is their oil and the mere fact that they have other oil in other parts of their lands, which will be increasingly produced, does not alter the status of plaintiff's basic rights. What plaintiffs are objecting to is, repressuring under a plan which deprives them of a part of their oil; and to this they have a right to object. They have a right to have the oil left in place until and unless repressuring can be done by a plan which will preserve to them all their oil, as well as increase production from the remaining land.'' The court might well have

added that if the parties desired to provide for repressuring as an incident of the lease they could very easily have done so.

With the exception of the necessity of an express provision as to repressuring, I do not believe the statement of the court in the *Ramsey* case could be improved upon, and I believe it is conclusive of the issues in the instant case. I agree with the court in the *Ramsey* case that it was not within the contemplation of the parties that the lessee could drive off substantial quantities of the lessor's oil, and the granted right to produce in the lease did not include the right to cause such migration. It is conceivable that if the parties desired to provide such a right they could have incorporated it specifically in the terms of the oil and gas lease. In absence of such specific provision I believe that the judgment of the trial court in this cause was proper and should be affirmed. I feel that the majority opinion is wrong in that a covenant is implied which is contrary to the actual intention of the parties, and that courts could go far afield in reading into a lease of this character an implied covenant which is not necessarily or reasonably implied from the terms of the lease. It was a simple matter to set forth the requirements as to repressuring if that was the actual intention of the parties.