[No. F042604. Fifth Dist. Apr. 1, 2004.]

THE LUNDIN/WEBER COMPANY LLC, Plaintiff and Appellant, v. BREA OIL COMPANY, INC., Defendant and Respondent.

428

COUNSEL

Gerald M. Leverett; Alexander & Associates and William L. Alexander for Plaintiff and Appellant.

Downey Brand, Julie A. Carter and Carlin A. Weible for Defendant and Respondent.

OPINION

**DAWSON, J.**—Appellant The Lundin/Weber Company LLC (Lundin/Weber) contends that an order granting summary adjudication as to seven of its causes of action was erroneous because California should recognize an implied covenant for further exploration in oil and gas leases. Respondent Brea Oil Company (Brea) argues that it fully complied with the express terms of the oil and gas leases which defined its responsibilities to drill wells in the search for oil and gas on the leased property, and that an implied covenant for further exploration is contrary to the express terms of the leases.

Based on the undisputed facts presented with the motion for summary adjudication, we conclude that a covenant for further exploration should not be implied in the two oil and gas leases involved in this case. Accordingly, the judgment is affirmed.

## UNDISPUTED FACTS RELIED UPON BY THE PARTIES

The following are all of the material facts the parties presented to the superior court in their separate statements of undisputed facts concerning the motion for summary adjudication. None of the facts asserted by either party were disputed.

Lundin/Weber is the current lessor, and Brea is the current lessee, under two oil and gas leases covering certain property located in Kern County, California (Leased Property). The first lease was entered in 1926 (1926 Lease) and was assigned to Brea in 1995. The second lease was entered in 1995 by Lundin/Weber, as lessor, and Brea, as lessee (1995 Lease).

Since 1995, Brea has drilled and operated wells on the land covered by both the 1926 Lease and the 1995 Lease. Several oil and gas wells exist on the land covered by the leases, and Lundin/Weber is receiving royalty payments for the wells' production.

Both the 1926 Lease and the 1995 Lease require the drilling of oil and gas wells by Brea, but neither expressly requires the drilling of any well to a particular depth.[1]

Lundin/Weber contends that, although Brea is in compliance with the express provisions of the leases, Brea should do more by drilling additional wells, which are deeper than 3,000 feet.

Brea has not drilled for oil, gas or other hydrocarbons below a depth of 5,000 feet on the real property covered by the 1926 Lease; has not prospected, explored or drilled for oil or gas from below 5,000 feet on the real property covered by the 1995 Lease; and has produced no oil, gas or other hydrocarbon substances from a depth of 5,000 feet or below on the real property covered by either lease.

In addition to these undisputed material facts listed in the separate statements, the parties each listed as fact their agreement that the question whether there is an implied covenant of further exploration in the 1926 Lease and 1995 Lease is a question of law.

## PROCEEDINGS

On November 5, 2001, Lundin/Weber filed a complaint against Brea asserting nine causes of action. The first seven causes of action were predicated on the claim that an implied covenant of further exploration is recognized in oil and gas leases in the State of California. The eighth cause of action was for breach of an agreement that was part written and part oral. The ninth cause of action was for rescission based on alleged mistake of fact.

Brea filed a motion for summary judgment or, in the alternative, summary adjudication and, in its opposing papers, Lundin/Weber framed the issue as follows:

"[Lundin/Weber's] first seven Causes of Action deal directly or indirectly with an implied covenant of further exploration. [Brea's] Motion for Summary Judgment challenges the existence of the implied covenant of further exploration in the State of California.

"As can be seen by [Lundin/Weber's] Response to [Brea's] Separate Statement of Facts, there is no real factual dispute regarding this claim.

---

[1] As supporting evidence, Brea cited to the two leases, which were attached as exhibits to the complaint. The lease provisions containing the drilling covenants are set forth below.

[Lundin/Weber] claims that an implied covenant of further exploration exists, [Brea] claims that the implied covenant of further exploration does not exist. [¶] . . . [¶]

". . . As to the covenant of further exploration, the gravamen of [Lundin/Weber]'s Complaint in general is that the Leases have been held for an undue length of time without a test of formations favorable to the accumulations of oils or gas or hydrocarbons, that [Brea] has no intention of exploring the lower depths and further that, so long as the lessee continues to hold the lease and refuses to explore, there can be no tests or exploration, because the lessee has the absolute and sole right to explore for, test and produce oil and gas on those properties."

The superior court filed its order denying the motion for summary judgment and granting in part the motion for summary adjudication of issues on October 1, 2002. The court granted summary adjudication of Lundin/Weber's first seven causes of action "because California does not recognize a cause of action based on breach of an implied covenant of further exploration. Moreover, there is no express contractual duty for Brea to drill any well to a particular depth."

The eighth and ninth causes of action were tried to the court, which found in favor of Brea on both and subsequently entered judgment in Brea's favor. Lundin/Weber filed a notice of appeal relating to the order granting summary adjudication as to the first seven causes of action, but did not appeal the superior court's decision on the eighth and ninth causes of action.

## DISCUSSION

### I. *Standard of Review*

The parties agree that the question whether California law should recognize an implied covenant of further exploration is one of law, subject to independent appellate review. (E.g., *Twedt v. Franklin* (2003) 109 Cal.App.4th 413, 417 [134 Cal.Rptr.2d 740].)

### II. *Background*

Much has been written on the subject of an implied covenant of further exploration in oil and gas leases. (See Martin, *Implied Covenants in Oil and Gas Leases—Past, Present & Future* (1994) 33 Washburn L.J. 639, 650, fn. 38 and the articles cited therein.) One well-respected treatise gives the subject

lengthy treatment. (See 5 Williams & Meyers, Oil and Gas Law (2003) §§ 841–847, pp. 267–388.) Another commentator, however, has described the scholarly debate as follows: "While some issues may remain open in some jurisdictions, it is probably fair to say that Mr. Brown's view that the implied covenant of further exploration does not exist has generally prevailed. See Richard W. Hemingway, The Law of Oil and Gas § 8.3(C) (3d ed. 1991)." (Lansdown, *The Implied Marketing Covenant in Oil and Gas Leases: The Producer's Perspective* (2000) 31 St. Mary's L.J. 297, 303, fn. 19.)

## III. *California's View of Implied Covenants in Oil and Gas Leases*

This court need not become mired in the many aspects of the scholarly debate, because the California Supreme Court has addressed the circumstances in which a covenant will be implied in an oil and gas lease and it has set forth the steps of the analysis to be used in reaching a determination. (*Hartman Ranch Co. v. Associated Oil Co.* (1937) 10 Cal.2d 232 [73 P.2d 1163] (*Hartman*) [a covenant to protect against drainage was implied into the lease].)

■ The first step requires a court to examine the express terms of the lease. As stated in *Hartman*: "In the absence of express provision it is well settled that covenants will be implied to use reasonable diligence in the exploration and discovery of oil, and thereafter in the development of the oil lease, and protection from drainage through wells on adjoining lands. [Citations.] Where express covenants do not cover completely all phases of the lessee's obligation in regard to exploration, development and protection, implied covenants may coexist with express covenants. . . . It is agreed, of course, that implied covenants will not be raised which are in conflict with express covenants." (*Hartman, supra,* 10 Cal.2d at p. 239.)

■ After identifying the relevant contractual provisions in the leases, a court's second step is to determine whether the alleged implied covenant would conflict with those express provisions. This step necessarily involves contractual interpretation. (See, e.g., *Storek & Storek, Inc. v. Citicorp Real Estate, Inc.* (2002) 100 Cal.App.4th 44, 55 [122 Cal.Rptr.2d 267] [addressing whether implied covenant of good faith contradicted express terms of loan agreement].)

In this case, we conclude the contractual interpretation required is a matter for the courts—that is, it presents questions of law, because (1) the parties

agreed that the existence of an implied covenant of further exploration was a question of law, which implies that the underlying contractual interpretation necessary to resolve that broader issue also presents only questions of law; (2) California courts have long recognized that the interpretation of a written instrument is a judicial function unless the interpretation turns upon the credibility of extrinsic evidence (*Parsons v. Bristol Development Co.* (1965) 62 Cal.2d 861, 865 [44 Cal.Rptr. 767, 402 P.2d 839]); and (3) under the rule of law stated in *Parsons*, courts have treated the question whether an implied covenant conflicts with the express terms of a contract as a question of law (e.g., *Storek & Storek, Inc. v. Citicorp Real Estate, Inc., supra*, 100 Cal.App.4th at p. 55 [whether implied covenant contradicted express terms was not a question of fact for the jury]).[2]

Lundin/Weber argues that there is no evidence in the record supporting the position that an implied covenant would contradict the express terms of the leases or the intentions of the parties. We reject this argument because the leases themselves are evidence and are part of the record supporting the motion for summary adjudication, and the intention of the parties is reflected in the words set forth in the leases.

■ Lundin/Weber also argues that Brea's assertion of a conflict between the express terms of the leases and an implied covenant of further exploration is specious because that assertion also could be used to eliminate the implied covenant of further development and the implied covenant to protect against drainage. This argument is not persuasive because (1) it ignores the fundamental concept that whether a covenant is implied in an oil and gas lease is a contract-specific inquiry under California law (see *Hartman, supra*, 10 Cal.2d at p. 239) and (2) such an elimination of implied covenants is within the power of contracting parties. In other words, the freedom to contract allows parties to an oil and gas lease to choose to cover all phases of the lessee's obligation in regard to exploration, development and protection in the express terms of the lease and thereby preclude any implied covenants that would contradict those express terms. (*Ibid.*)

IV. *Drilling and Exploration Covenants Expressed in the Leases*

A. *The 1926 Lease*

Our examination of the relevant provisions of the 1926 Lease begins with paragraph (3), which provides in part: ". . . Lessee further agrees, for the first

---

[2] We recognize that situations can arise where the existence of conflict between an implied covenant and the express terms of a contract turns upon the credibility of extrinsic evidence and, thus, a question of fact is raised, but that situation does not exist in this case because no conflicting extrinsic evidence was offered by the parties in connection with the motion for summary adjudication.

four years during the term of this lease, to drill ten (10) new wells each year (including offset wells) each such well, after commencing the same, to be drilled with due diligence until a depth of one thousand (1000) feet has been reached, unless oil is discovered in paying quantities at a lesser depth, or unless such formations are encountered at a lesser depth as will indicate to the geologist of the Lessee that further drilling will be unsuccessful. In the event of encountering mechanical difficulties in the prosecution of work, the Lessee may abandon the same, but this lease shall continue in full force, provided a new well is commenced within ninety (90) days and thereafter drilled diligently as hereinabove provided. [¶] Nothing herein shall be construed to limit the number of wells which the Lessee may drill, should it so elect, in excess of the number hereinabove specified."

Paragraph (4) of the 1926 Lease stated that, after the expiration of 20 years, no further wells were to be drilled on the property, and the lessee's rights would cease except for its rights in producing wells and 10 acres surrounding those wells. Brea and Lundin/Weber modified the 1926 Lease in 1995 by deleting paragraph (4) and changing the royalty percentage.

Paragraph (5) of the 1926 Lease addresses the lessee's responsibility to drill offset wells in the event a producing well is located on adjacent property within 250 feet of the leased property. It states that, in such circumstances, "then the next well to be drilled hereunder shall be so placed to offset said well on the adjacent property, or if no well is being drilled and the total well requirements of this lease for the then current year have been fulfilled, then within ninety (90) days thereafter a well shall be commenced by the Lessee to offset said producing well on the adjacent property, but such well shall be credited to the Lessee on his next succeeding well obligation."

Under the foregoing provisions, it is clear that the 1926 Lease addressed the minimum number of wells required to be drilled and, prior to modification, the circumstances in which the rights in the land would revest in the lessor.

The second step of the analysis requires us to address whether the express provisions "cover completely all phases of the lessee's obligation in regard to exploration" (*Hartman*, *supra*, 10 Cal.2d at p. 239) and, as a result, conflict with an implied covenant of further exploration.

The case most helpful to this inquiry was decided before the 1926 Lease was executed. (See *Becker v. Submarine Oil Co.* (1921) 55 Cal.App. 698 [204 P. 245] (*Becker*).) In *Becker*, the Court of Appeal addressed the issue whether

an oil and gas lease contained an implied covenant to sink more wells than those specified in the lease. (*Id.* at p. 701.) The appellant-lessor specifically "contended that the law implies an agreement to add other wells in addition to those stipulated by the parties." (*Ibid.*) The lease in that case provided that (1) the lessee would complete three wells within the first 90 days and 10 wells within one year, and (2) the failure of the lessee to comply with the terms or an abandonment of work for 60 days would, at the lessor's option, cause a forfeiture of the lease. The lessee had completed the required 10 wells, but had drilled no additional wells in the following 10 years.

After reviewing the express terms of the lease, the court stated that "[t]he parties left nothing to implication. To remove all doubt in that regard they have also made a clear stipulation concerning the conditions under which there may be a forfeiture of the lease." (*Becker, supra*, 55 Cal.App. at p. 702, 204 P. 245.) Thus, the court concluded "it would be usurping the right of the parties to contract for the court to insert other requirements and provisions concerning these important considerations." (*Ibid.*) Alternatively, the court held the facts established that the lessee had acted with ordinary diligence in its exploration of the property and therefore, even assuming a covenant to diligently prospect for oil was implied in the lease, no breach of that implied covenant occurred. (*Id.* at p. 703.)

Like the court in *Becker*, and because of the contracting parties' specific agreement with respect to the wells that were to be drilled, we conclude that they left nothing to implication. In light of the express provisions of the 1926 Lease and California case law, we conclude the superior court properly ruled against Lundin/Weber in respect to that lease.

B. *The 1995 Lease*

The drilling and development provisions contained in the 1995 Lease are more extensive than those in the 1926 Lease. Paragraph (8) of the 1995 Lease provides: "Subject to Lessee's right to defer drilling operations during the primary term hereof by the payment of advance annual rental as provided hereinabove, Lessee agrees to commence drilling operations on said land on or before the expiration of the [five-year] primary term hereof and thereafter to prosecute the drilling of a well or wells with reasonable diligence until oil or gas, or any leased substance, is found in quantities deemed paying by Lessee, or to a depth to which further drilling operations would in the judgment of Lessee be unprofitable or impracticable, or Lessee may at any time without

commencing or continuing any drilling operations quitclaim the leased land to Lessor as hereinafter provided and thereby terminate this lease."

Paragraph (9) of the 1995 Lease provides in part:

"After the discovery of oil, gas or other leased substances in paying quantities as deemed by Lessee upon the leased land, Lessee shall reasonably develop the acreage retained hereunder, but in discharging this obligation Lessee shall in no event be required to drill more than one well per ten (10) acres of the area retained hereunder and capable of producing oil in paying quantities and one well per one hundred sixty (160) acres of the area retained hereunder and capable of producing gas in paying quantities. Further, in fulfilling said development obligation Lessee shall prosecute drilling operations with due diligence and in good faith to completion, but in no event shall Lessee be required to proceed at a more rapid pace than the commencement of drilling operations on the next succeeding well within three (3) months from the date of completion or abandonment of the last preceding well drilled hereunder; [provided, however, that the drilling obligations may be deferred in certain circumstances upon the payment of rent.]

"If at the end of the [five-year] primary term hereof, Lessee is engaged in producing operations only and is not engaged in any drilling, redrilling or reworking operations, this lease shall expire and terminate as to all the acreage contained in this lease, save and except ten (10) acres in the form of a square around each well then producing or capable of producing the leased substances in paying quantities together with two and one half (2-1/2) acres around each injector and/or disposal well. Upon any such expiration and termination, Lessee shall promptly furnish Lessor with a recordable Quitclaim of said expired and terminated acreage. Thereafter, Lessee shall promptly plug and abandon according to government regulations any and all non-producing wells located on the expired and terminated acreage."

■ Under the foregoing provisions, Brea explicitly agreed to prosecute the drilling of wells with reasonable diligence *until oil or gas was found in quantities deemed paying by Brea* and, once paying quantities of oil or gas were found, to reasonably develop the acreage it retained. Because of the specific limitation placed on Brea's obligations to prosecute the drilling of wells, and because of the provisions concerning the retention of acreage under the 1995 Lease, we conclude that the express provisions of the 1995 Lease conflict with an implied covenant of further exploration. In other words, where parties have chosen not to extend the obligation to explore for oil or gas beyond the discovery and development of paying quantities, a court should not insert obligations in direct conflict with the limitation expressed by the parties. (See Civ. Code, §§ 1655 [reasonable

stipulations implied in a contract that manifests no contrary intent], 1656 [implied incidents]; Code Civ. Proc., § 1858 [in construing an instrument, judges are not to insert what has been omitted].) To do otherwise could upset the allocation of risk and reward achieved by the parties in their negotiations.

We conclude, therefore, that the trial court's ruling against Lundin/Weber in respect to the 1995 Lease was correct.

## V. Conclusion

■ We hold in this case that, where the parties to an oil and gas lease have set out the lessee's exploration and development responsibilities in such a way as to leave no room for the implication of a duty to do more than that which is specified in their agreement, the so-called implied covenant of further exploration will not be recognized. This is nothing more than the application of ordinary principles of contract law. The application of these principles must be done on a case-by-case basis and necessarily will produce a result that is contract specific. Although we have chosen to publish this decision because of the public interest in the debate raised by the implied covenant of further exploration, we leave for another day the more fundamental question whether, and to what extent, California courts will imply a covenant of further exploration when such a covenant would not conflict with the express terms of the oil and gas lease.[3]

■ Accordingly, in the present case, whether a conflict exists between the express terms of the leases and any implied covenant of further exploration is a question appropriately decided by the courts in the context of a motion for summary adjudication.

## DISPOSITION

The trial court's judgment in this matter is affirmed. Respondent is awarded costs on appeal.

Wiseman, Acting P. J., and Gomes, J., concurred.

---

[3] The trial court, in granting summary adjudication, stated the conclusion that California law does not recognize the implied covenant of further exploration. Again, we leave this issue for another day. We note, also, that the scope of our review is not limited to an evaluation of the trial court's reasoning. We review the trial court's rulings, not the reasons for them. (*Diaz v. Shultz* (1947) 81 Cal.App.2d 328, 332 [183 P.2d 717]; see also *Western Mutual Ins. Co. v. Yamamoto* (1994) 29 Cal.App.4th 1474, 1481 [35 Cal.Rptr.2d 698].)