MS Real Estate Holdings, LLC,
Plaintiff-Appellant,

v.

Donald P. Fox Family Trust,
Jean A. Fox Revocable Living Trust,
Jean A. Fox, Michael J. Fox, Thomas P. Fox,
Karen L. Brazee, Carol L. Brewer, Ellen J. Fox
and Amy J. Alaniz, Defendants-Respondents.†

Court of Appeals

*No. 2013AP679. Submitted on briefs July 21, 2014.
—Decided July 29, 2014.*

2014 WI App 84

(Also reported in 853 N.W.2d 627.)

† Petition for Review granted November 17, 2014.

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Jordan J. Hemaidan* and *Michael P. Screnock* of *Michael Best & Friedrich LLP*, Madison.

On behalf of the defendants-respondents, the cause was submitted on the briefs of *Charles D. Koehler* and *Michael C. Menghini* of *Herrling Clark Law Firm Ltd.*, Appleton.

Before Hoover, P.J., Mangerson and Stark, JJ.

¶ 1. MANGERSON, J. MS Real Estate Holdings, LLC, formerly Tidy-View Dairy, Inc., ("Tidy-View") appeals a grant of summary judgment in favor of the Donald P. Fox Family Trust, the Jean A. Fox Revocable Living Trust, Jean A. Fox, Michael J. Fox, Thomas P. Fox, Karen L. Brazee, Carol L. Brewer, Ellen J. Fox, and Amy J. Alaniz (collectively, "the Foxes"). Tidy-View argues the circuit court erred in concluding its Right of First Refusal ("ROFR") agreement with Jean and Donald Fox was indefinite as to duration and terminable after a reasonable time. We agree with Tidy-View, reverse the judgment, and remand for further proceedings consistent with this opinion.

## BACKGROUND

¶ 2. In 1998, Tidy-View agreed to the ROFR with Jean and Donald Fox. The ROFR grants Tidy-View two rights: a right of first refusal to purchase property located in Outagamie County, and a right of first refusal to lease the property. The purchase provision of the ROFR states:

**SECTION 1: RIGHT OF FIRST REFUSAL TO PURCHASE**

Fox grants and conveys to Tidy-View a first right to purchase the Property, or any part thereof, for the same

price and on the same terms which Fox is willing to transfer such Property to another party. Prior to such transfer, Fox shall deliver to Tidy-View a written copy of the Offer, which Fox is willing to accept. Tidy-View shall then have 15 (fifteen) days in which to accept or reject the Offer according to its price, terms and conditions. If the Offer is accepted, the transfer shall be closed in accordance with the Offer with Tidy-View as purchaser. If the Offer is rejected, Fox may complete the sale in strict compliance with the Offer. If the sale is not closed, this first right of refusal shall again take effect.

The lease provisions are similar to this purchase provision, but also contain a subsection governing the duration of Tidy-View's lease rights:

### SECTION 2: RIGHT TO LEASE

**2.1 Leasing Rights.** Fox grants and conveys to Tidy-View a first right to lease the Property, or any part thereof, for the same price and on the same terms which Fox is willing to Lease such Property to another party. Prior to execution of any Lease, Fox shall deliver to Tidy-View a written copy of the Lease, which Fox is willing to accept. Tidy-View shall then have 15 (fifteen) days in which to accept or reject the Lease according to its price, terms and conditions. If the Lease is accepted, Tidy-View shall be obligated to make all payments in accordance with the Lease with Tidy-View as Lessee. If the Lease is rejected, Fox may execute the Lease as Lessor with the other party as Lessee. If the Lease is not executed, the first right to lease shall again take effect.

**2.2 Continuing Rights.** This Section 2 right shall continue for any subsequent renewal of a Lease with another party or upon the entering into of a new Lease with any other party. It is specifically intended that this leasing right shall not extinguish unless waived by Tidy-View.

The ROFR is "binding upon the respective parties, their heirs, personal representatives, successors in interest and assigns." Tidy-View paid about $4,000 for these rights.

¶ 3. Tidy-View began leasing the property in 2001. In 2007, Donald Fox signed a five-year lease extension with Tidy-View, to expire in January 2012. On July 29, 2011, and again on October 26, 2011, Jean Fox[1] notified Tidy-View that its lease agreement would soon expire, and requested a bid to lease for the 2012 crop year. Fox also solicited offers from other potential lessees, and received two. The first offer, from Tinedale Cropping, was not acceptable to Fox, but the second, from Kavanaugh Farms, was. Pursuant to Section 2, Fox presented Tidy-View with the Kavanaugh offer.

¶ 4. Tidy-View commenced this lawsuit against the Foxes, arguing it was permitted to lease the property under the Tinedale offer's terms. On March 6, 2012, Jean Fox notified Tidy-View that she was terminating the ROFR in its entirety, claiming it was unenforceable for vagueness as to its term.

¶ 5. The Foxes initially filed a motion to dismiss Tidy-View's lawsuit, arguing the Tinedale proposal was never acceptable and, therefore, Tidy-View could not exercise its lease rights under those terms. Later, the Foxes sought summary judgment, arguing the ROFR was void upon Jean Fox's notice of termination. The parties reached an interim agreement regarding whether Tidy-View could lease under the terms of the Tinedale offer. Thus, the sole remaining issue before the court was whether the ROFR was terminable for indefiniteness.

---

[1] By this time, Donald Fox had died and Jean Fox had transferred portions of the property to the Donald P. Fox Family Trust and the Jean A. Fox Revocable Living Trust.

¶ 6. The circuit court granted the Foxes' summary judgment motion. It concluded that a contract must have "some reasonable delineation of the duration of the right," without which it is indefinite and contrary to public policy. The court continued, "Between Fox and Tidy[-]View there is nothing to define a term other than this residual expectation inherent in ownership, that sooner or later there will be a proposed sale." The court reasoned that without a definite term of months or years, or a term tied to the life span of a principle or his or her heirs, the ROFR created a "perpetual right" that was terminable after a reasonable time by law. Then, citing the price paid as consideration for the ROFR, the court concluded that "15 years clearly meets a standard for the passage of a reasonable time for an agreement regarded as terminable at will." Tidy-View appeals.

## DISCUSSION

¶ 7. We review a grant of summary judgment de novo. *Chapman v. B.C. Ziegler & Co.*, 2013 WI App 127, ¶ 2, 351 Wis. 2d 123, 839 N.W.2d 425. The summary judgment methodology requires that we first determine whether a claim has been stated and whether the answer disputes the facts underlying the claim. *Id.* If the pleadings join issue, we then assess whether there is a genuine issue of material fact. *Id.* Summary judgment is appropriate if there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. WIS. STAT. § 802.08(2).[2]

---

[2] All references to the Wisconsin Statutes are to the 2011–12 version unless otherwise noted.

¶ 8. To determine whether the ROFR is indefinite, we must interpret the document. In interpreting a contract, we attempt to give effect to the intentions of the parties. *See Nature Conservancy of Wis., Inc. v. Altnau*, 2008 WI App 115, ¶ 6, 313 Wis. 2d 382, 756 N.W.2d 641. If the contract language gives rise to one clear and unambiguous meaning, we will apply the language as written. *Id.* The contract is ambiguous if the language is susceptible to more than one meaning. *Id.* Extrinsic evidence of the parties' intent is relevant only to an ambiguous contract. *Id.* Absent ambiguity, the construction of a written contract is a matter of law. *Levy v. Levy*, 130 Wis. 2d 523, 528, 388 N.W.2d 170 (1986).

¶ 9. It is undisputed the ROFR does not include a definite temporal limitation. That is, the agreement does not identify when the attendant rights and obligations are extinguished or lapse. Indeed, by binding the parties' "heirs, personal representatives, successors in interest and assigns," it appears the parties envisioned a long-term contractual relationship.

██ █

¶ 10. The Foxes persuaded the circuit court that the parties' failure to include a definite temporal limitation rendered the ROFR indefinite, and therefore terminable after a reasonable time. "As a general rule, when a contract is of indefinite duration, we will imply a reasonable time for performance." *Schneider v. Schneider*, 132 Wis. 2d 171, 175, 389 N.W.2d 835 (Ct. App. 1986). Courts do not favor contracts of indefinite duration, and are reluctant to interpret a contract as providing for perpetual or unlimited rights unless the relevant documents clearly state that to be the intention of the parties. *Id.*

¶ 11. When this case was initially submitted, we were under the impression that the only issue on appeal was the enforceability of the ROFR's purchase provision, the lease issue having been settled.[3] We issued an opinion holding that the purchase provision was enforceable and terminated upon sale of the property, an analysis we now adhere to. *See infra,* ¶¶ 12–23. In a motion for reconsideration, Tidy-View observed the parties' settlement extended only to the immediate dispute over the Tinedale lease offer, and not the enforceability of the lease provisions. Accordingly, Tidy-View requested that we also address the enforceability of its lease rights. We withdrew our opinion, ordered supplemental briefing, and now address the lease provision separately. *See infra,* ¶¶ 24–32.

1. *Enforceability of Section 1, the ROFR's purchase provision*

¶ 12. We begin with the purchase provision's plain language. *See BV/B1, LLC v. InvestorsBank,* 2010 WI App 152, ¶ 25, 330 Wis. 2d 462, 792 N.W.2d 622. Section 1 states that Tidy-View has the right to purchase the property "for the same price and on the same terms which Fox is willing to transfer such Property to another party."[4] The contract obligates the Foxes to provide written notice of an offer they are willing to accept. It

---

[3] This impression was formed in no small part by Tidy-View's appellate briefing, which was dedicated exclusively to analyzing the purchase provision. Indeed, Tidy-View's brief-in-chief, despite urging a plain-language interpretation of the agreement, did not even set forth the lease provisions, and mentioned them only in passing with respect to the proceedings below.

[4] The ROFR defines "transfer" as "to sell, give, assign, transfer or in any manner dispose of [the property] either voluntarily or by operation of law."

then gives Tidy-View fifteen days within which to accept or reject the offer. If Tidy-View accepts the offer, it is substituted for the purchaser and the transaction is closed pursuant to the agreement. If Tidy-View rejects the offer, Fox is free to sell to the third party. If that sale is not consummated, Tidy-View's right to match a purchase offer springs back to life.

■■

¶ 13. We conclude a right of first refusal to purchase, such as the one contained in Section 1 of the ROFR, is not amenable to the general rule of indefiniteness applied by the circuit court. The right, by its very nature, is intended to lie dormant until a specified triggering event occurs. *See Wilber Lime Prods., Inc. v. Ahrndt*, 2003 WI App 259, ¶ 10, 268 Wis. 2d 650, 673 N.W.2d 339 ("The right of first refusal 'remains in an unripened or suspended state, awaiting the energizing spark provided when the condition precedent of intent and offer is met.' " (Quoted source omitted.)). A right of first refusal contains "all the essential elements of a contract, the provisions of which give to the prospective purchaser the right to buy upon the specified terms, but, and this is the important point, only if the seller decides to sell." *Edlin v. Soderstrom*, 83 Wis. 2d 58, 68, 264 N.W.2d 275 (1978).

¶ 14. In *Schneider*, we determined a right of first refusal to purchase was not indefinite because it could be triggered at any time by a sale. There, two brothers —John and Allen—agreed they would only sell property they owned as tenants in common with the other's consent and, failing that, only after first giving the other the right to purchase it. *Schneider*, 132 Wis. 2d at 173–74. When the brothers could not agree on a value, John commenced a partition action. *Id.* at 174. Allen raised as a defense WIS. STAT. § 842.02(1), which stated

that a partition action may be prohibited by an "agreement between the parties for a period not to exceed 30 years." *Id.* at 174–75. Allen asserted the right of first refusal to purchase prohibited the partition action. *Id.* The problem was the right of first refusal, like the one here, did not include any temporal limitation, and therefore arguably violated the thirty-year requirement.

¶ 15. We decided the right of first refusal to purchase in *Schneider* was nevertheless sufficiently definite because it was "terminable by either party at any time." *Id.* at 176. Any attempt to sell by one brother required the other's consent; if that was withheld, a sixty-day option to purchase was triggered. *Id.* Thus, a sale could occur at any time; to the brother, if he exercised the option, or to a third party, if the brother elected not to exercise the option or consented to the sale. *Id.* Under *Schneider*, a sale is the defining event that gives a right of first refusal sufficient temporal definition.

¶ 16. We conclude *Schneider* controls this case with respect to Section 1 of the ROFR. While the right of first refusal to purchase in the present case is not temporally limited, it may be "activated" at any time by an offer to purchase the property. After the Foxes receive such an offer, Tidy-View has a fifteen-day window to agree to purchase under the terms of that offer; if Tidy-View elects not to exercise its rights, the Foxes may proceed with the sale to a third party.

¶ 17. Thus, the Foxes may sell the property at any time; either to Tidy-View, in accordance with Section 1, or to a third party, if Tidy-View chooses not to exercise its rights. The agreement is sufficiently definite because it specifies an event—sale of the property—upon which the contract ends. *See Pallange v. Mueller,* 206

Wis. 109, 111, 238 N.W. 815 (1931) ("Words which fix an ascertainable fact or event by which the term of the contract's duration can be determined make the contract definite and certain in that particular."). Until that occurs—however long it may be—Section 1 remains in effect, according to the provision's unambiguous language.

¶ 18. In concluding the ROFR could be terminated after a reasonable time, the circuit court stated there was "no language suggesting an intent to continue the ROFR indefinitely." The court was apparently concerned that, without an explicit temporal limitation, the ROFR would burden the land in perpetuity. This concern, at least as it pertains to the ROFR's purchase provision, was overstated. The court invoked *Gray v. Stadler*, 228 Wis. 596, 598, 280 N.W. 675 (1938), in which a lessee argued she and her heirs were permitted by the terms of her lease to renew indefinitely at a set amount. Noting that perpetual leases are strongly disfavored, the supreme court held that the lease agreement did not clearly and plainly express the parties' intent to create a right in perpetuity. *Id.* at 600. Here, we are not concerned about restricting possession or ownership of the land. Section 1 merely "provides a possible buyer who is constantly available." *Bruns v. Rennebohm Drug Stores, Inc.*, 151 Wis. 2d 88, 99, 442 N.W.2d 591 (Ct. App. 1989) (citing RESTATEMENT (SECOND) OF PROP.: DONATIVE TRANSFERS § 4.4 cmt. a (1983)). Thus, we are not persuaded by the Foxes' argument that the right of first refusal to purchase might last forever if the Fox family decides not to sell or lease in the future.

¶ 19. The Foxes argue "interpreting the ROFR to last into eternity unless the Fox [family] or its heirs, successors or assigns sell the Property is against public policy." This argument is devoid of authority and will

not be considered. *See State v. Pettit*, 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992). In any event, as the dissent in *Gray* recognized, even perpetual leases— which convey a greater interest (possession) than a mere right of first refusal—are not automatically void or unenforceable as against public policy. *Gray*, 228 Wis. at 603 (Nelson, J., dissenting).

¶ 20. Next, the Foxes urge us to hold that the ROFR's purchase provision creates an impermissible restraint on alienation because its terms are not reasonable. A right of first refusal "is not a restraint on alienation of property if its terms are reasonable as to price and time." *Bruns*, 151 Wis. 2d at 99 (citing RESTATEMENT (SECOND) OF PROP.: DONATIVE TRANSFERS § 4.4 (1983)). The Foxes argue the purchase provision is unacceptable because it is of indefinite duration, making it unreasonable as to time, and because Tidy-View paid only $4,000 to secure it, making it unreasonable as to price.

¶ 21. The Foxes misconstrue the nature of the reasonableness inquiry. With rights of first refusal to purchase, two contracts are in play. The first, often for modest consideration, purchases the right to buy property before anyone else at a designated price. The second contract is the ultimate purchase agreement between buyer and seller. In assessing reasonableness, we do not look to the duration of the right of first refusal or the consideration paid for it. Reasonableness as to time and price refers to the price the person holding the right of first refusal must pay to purchase the property, and the time allowed for the exercise of the right. *See* RESTATEMENT (SECOND) OF PROP., *supra.*

¶ 22. With the analysis properly focused, we conclude Section 1 is reasonable as to price and time.

Assuming an arms-length transaction between the Foxes and a third party, Tidy-View may purchase the property at its market value. Further, Tidy-View has a relatively short period—fifteen days—in which it must exercise its preemptory right by agreeing to purchase pursuant to the offer's terms. The Foxes do not argue these provisions are in any way unreasonable.

¶ 23. Accordingly, we conclude the right of first refusal to purchase in this case is sufficiently definite and reasonable, and terminates upon sale of the property, either to Tidy-View or a third party. We now consider whether the same is true of the ROFR's lease provision.

### 2. *Enforceability of Section 2, the ROFR's lease provision*

¶ 24. Once again, we begin with the contract's plain language. The right of first refusal to lease contains two sections. The first section, Section 2.1, defines the scope of the right. The second section, Section 2.2, defines the duration of the right.

¶ 25. Section 2.1 operates much like Section 1. It gives Tidy-View a right of first refusal to lease the property "for the same price and on the same terms" that the Foxes are willing to lease to a third party. Section 2.1 obligates the Foxes to provide written notice of an acceptable offer to lease. Tidy-View then has fifteen days within which to accept or reject the lease offer. If Tidy-View accepts, it steps into the third party's shoes as lessee. If Tidy-View rejects the lease, the Foxes may lease the property to the third party. The failure to execute a third-party lease resurrects Tidy-View's preemptory lease right.

¶ 26. Section 2.2 defines the duration of Tidy-View's lease right, and has no analog in Section 1. Section 2.2 states Tidy-View's preemptory lease rights "shall continue for any subsequent renewal of a Lease with another party or upon the entering into of a new Lease with any other party." Further, Section 2.2 states the parties "specifically intended that this leasing right shall not extinguish unless waived by Tidy-View."

¶ 27. At first blush, Section 2.2, taken together with the fact that the ROFR is binding on "heirs, personal representatives, successors in interest and assigns," appears to create a right in perpetuity. Tidy-View's Section 2 rights are not extinguished when the Foxes lease the land to Tidy-View or a third party, nor are they clearly extinguished upon sale of the property, as is the case with Section 1. However, as we explain, closer scrutiny reveals Tidy-View's right of first refusal to lease does indeed terminate upon sale of the property to a third party.

¶ 28. During initial briefing, Tidy-View did not differentiate between the enforceability of its Sections 1 and 2 rights. It simply asserted the entire ROFR was valid and enforceable because it terminated upon sale of the property. Tidy-View backs away from that assertion in its supplemental briefing. It argues that while the plain language of Section 1 "operates to extinguish the purchase right upon a bona fide sale of the property," the lease provision "lawfully binds successive purchasers . . . ." *See Nature Conservancy*, 313 Wis. 2d 382, ¶¶ 1, 7–8, 12 (agreement granting right of first refusal to the grantees and their "heirs, successors, and assigns" created a servitude that runs with the land).[5] In other

---

[5] While we recognize a right of first refusal is in the nature of a servitude, we share a concern raised by the Foxes in their supplemental brief: where a right of first refusal runs with the

words, Tidy-View now embraces Section 2's indefinite-
ness.[6]

land and binds successive purchasers, but is not recorded, there
is "no publicly disclosed attachment or servitude interest in the
land itself, unlike a recorded easement for ingress and
egress . . . ."

[6] Tidy-View claims it did not separately address the enforce-
ability of the purchase and lease provisions during initial briefing
because "the Foxes never raised any arguments specific to [the
lease provision] in seeking to invalidate the ROFR Agreement."
Tidy-View claims that, as a result, "the circuit court did not
independently analyze the legal sufficiency of the lease provision,
[so] there was nothing substantive in the circuit court decision
regarding the lease provision from which to appeal."

We conclude this explanation for Tidy-View's failure to sepa-
rately address the purchase and lease provisions is lacking,
particularly in light of its motion for reconsideration. The circuit
court concluded the ROFR was terminable after a reasonable
time, and that fifteen years was a reasonable duration. That
decision is clearly inconsistent with Tidy-View's present argu-
ment that the lease provision is not only valid and enforceable
against the Foxes, but also successive purchasers, while the
purchase provision terminates upon sale of the property.

It is possible Tidy-View believed it was precluded from
distinguishing between the purchase and lease provisions in its
initial appellate brief because it failed to make that distinction
below. *See State v. Holland Plastics Co.*, 111 Wis. 2d 497, 504,
331 N.W.2d 320 (1983) ("Generally, issues not raised or consid-
ered by the trial court will not be considered for the first time on
appeal."). If that was the case, Tidy-View should have been
forthright in its initial briefing and requested that we nonethe-
less consider its forfeited argument. *See Village of Trempealeau
v. Mikrut*, 2004 WI 79, ¶ 17, 273 Wis. 2d 76, 681 N.W.2d 190
(forfeiture rule is one of judicial administration, and a review-
ing court has inherent authority to disregard it and address the
merits of an unpreserved issue in exceptional cases).

Instead, Tidy-View waited until after we released our
now-withdrawn opinion to file a motion requesting that we
address the validity of the lease provision, which, again, Tidy-
View's brief-in-chief did not even quote, let alone analyze.
Tidy-View's procedural shenanigans added unnecessary ex-

¶ 29. While a lease provision that runs indefinitely with the land and is binding on successive purchasers arguably implicates the circuit court's concerns about indefiniteness and burdening the land in perpetuity, we conclude those are not the effects of the lease provision here. According to Section 2.2, only Tidy-View's "waiver" extinguishes its lease rights. Nowhere does the ROFR explicitly state what constitutes waiver. That, however, does not automatically render the contract ambiguous. "A contract is ambiguous when its terms are reasonably susceptible to more than one interpretation." *BV/B1*, 330 Wis. 2d 462, ¶ 19. We will consider the language of the contract as a whole, and analyze contract clauses in context, as they are reasonably understood. *Chapman*, 351 Wis. 2d 123, ¶ 2.

¶ 30. We conclude waiver can have only one reasonable meaning under the policy. "Waiver" must refer to Tidy-View's refusal to buy the property under the terms of a third-party offer to purchase, when the transfer to a third party is ultimately accomplished pursuant to Section 1. "Waiver" cannot refer to Tidy-View's refusal to meet the terms of a third-party lease; that would make Section 2.2 internally inconsistent. The only interpretation of "waiver" consistent with the entire agreement is Tidy-View's refusal to meet the terms of a third-party purchase offer. "Waiver," in a sense, ties together the purchase and lease provisions such that the sale or transfer of the property to a third party necessarily extinguishes both rights.

¶ 31. We conclude this interpretation gives effect to the intent of the parties, which is our primary goal.

pense for the litigants and hampered this court's efficient administration of justice. Needless to say, we strongly disapprove of the manner in which Tidy-View handled this appeal.

*See Nature Conservancy*, 313 Wis. 2d 382, ¶ 6. As Tidy-View concedes, the "primary purpose of the ROFR . . . was to afford Tidy[-]View the pre-emptive opportunity to utilize the property in the event the Foxes choose to offer such use to others." When Tidy-View allows a third party to buy the property, it has necessarily waived its opportunity to use the land. And since the Foxes no longer own the property upon a completed third-party transfer, they are no longer in a position to offer its use to anyone else, including Tidy-View.

¶ 32. Thus, the provision binding "the respective parties, their heirs, personal representatives, successors in interest and assigns" to the ROFR is in fact modified and limited by both Sections 1 and 2.2. The contract terminates in its entirety upon sale or transfer of the property to a third party.

## CONCLUSION

¶ 33. In sum, we have determined the circuit court erred when it concluded the ROFR was indefinite and therefore terminable after a reasonable time. For different reasons, both the ROFR's purchase and lease provisions extinguish upon sale or transfer of the property to a third party. Accordingly, we reverse the circuit court's grant of summary judgment for the Foxes and remand for further proceedings consistent with this opinion.

*By the Court.*—Judgment reversed and cause remanded with directions.