**COURT OF APPEALS
DECISION
DATED AND FILED**

**June 16, 2026**

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2024AP1615**

STATE OF WISCONSIN

Cir. Ct. No. 2022CV624

IN COURT OF APPEALS
DISTRICT III

---

JUSTIN KLIMEK,

  PLAINTIFF-APPELLANT,

PATRICIA KOPELKE AND DARIEN FITTING,

  PLAINTIFFS,

 V.

NICOLET NATIONAL BANK,

  DEFENDANT-RESPONDENT.

---

APPEAL from an order of the circuit court for Brown County: JAMES A. MORRISON, Judge. *Affirmed.*

Before Stark, P.J., Hruz, and Gill, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM.   Justin Klimek[1] appeals from an order of the circuit court granting Nicolet National Bank's motion to dismiss his complaint.  Klimek, an account holder at Nicolet, argues that the contract governing his relationship with the bank unambiguously did not permit the bank to charge him multiple "non-sufficient funds" (NSF) fees on one "item."  He argues, in the alternative, that the contract is ambiguous on this issue, and, therefore, the court erred by granting Nicolet's motion.  For the reasons that follow, we conclude that the court did not err by granting Nicolet's motion to dismiss, and we affirm.

## BACKGROUND

¶2     Klimek filed a class action lawsuit against Nicolet alleging breach of contract and violation of the covenant of good faith and fair dealing.  The claims pertained to a fee Nicolet charged to Klimek in July 2021.

¶3     According to Klimek's amended complaint, Nicolet imposed an initial $35 NSF fee[2] sometime that month after a merchant requested that the bank make a payment for an "item" in excess of Klimek's available account balance. Klimek does not dispute that Nicolet appropriately charged this first fee.

---

[1] For reasons not relevant to our decision, Patricia Kopelke and Darien Fitting have not filed a notice of appeal relevant to the claims addressed in this opinion, and we do not address those parties further.

[2] Although the names of the types of fees discussed in this opinion may vary from bank to bank, for purposes of this appeal, we adopt the terminology used by the parties.  In particular, we refer to "overdraft" fees when discussing those fees imposed by a bank when the bank makes payment as requested by a merchant, or other payee, despite the account holder lacking sufficient funds.  We refer to NSF fees when discussing those fees imposed by a bank when the bank denies payment requested by a merchant, or other payee, because the account holder lacks sufficient funds.  We note that Klimek's complaint appears to use the term "NSF Fees" to include both types of fees.

¶4      However, following the merchant's second request for payment on the same "item," made without "Klimek's request to reprocess the transaction," Nicolet charged Klimek an "additional" $35 fee. Nicolet did so after either denying the merchant's new payment request or paying the merchant against insufficient funds, due to Klimek's account balance still being insufficient to cover the cost of the "item."[3]

¶5      Klimek included as exhibits to his amended complaint his "Deposit Account Terms and Conditions" and Nicolet's then-current "Fee Schedule" (collectively, "the contract"). In relevant part, § 27 of the Deposit Account Terms and Conditions states:

> **Insufficient Funds and Overdrafts.** [Nicolet] has no obligation to pay any item that is presented for payment against insufficient available funds. [Nicolet] may determine whether or not your account contains sufficient available funds to pay an item at any time between the time the item is presented and [Nicolet's] return deadline, and only one determination of the account balance is required. If that determination reveals insufficient available funds to pay the item, [Nicolet] is not required to pay the item and may return it unpaid. Alternatively, [Nicolet] may pay the item and create an overdraft in your account. Whether or not [Nicolet] decides to pay the item and create an overdraft is in the sole discretion of [Nicolet] and will depend on various factors, including your history with [Nicolet].…

---

[3] Klimek did not allege in the amended complaint the dates of the merchant's first or second requests for payment or whether Nicolet paid the merchant's second request. On appeal, Nicolet attempts to fill these factual gaps by claiming that the merchant made its second request for payment almost two weeks after the first and that Nicolet paid the merchant's second request and charged Klimek an overdraft fee. However, our review on appeal of Nicolet's motion to dismiss is limited to the facts alleged in the amended complaint, and we do not address these additional factual allegations further. *See Data Key Partners v. Permira Advisers LLC*, 2014 WI 86, ¶¶18-19, 356 Wis. 2d 665, 849 N.W.2d 693. Therefore, it is unclear for purposes of this appeal when the merchant made the requests for payment or whether Nicolet's second imposed fee was an overdraft fee or an NSF fee.

> An insufficient balance or overdraft in your account and each item presented for payment against insufficient available funds in your account (whether paid, denied, or returned) are each subject to an overdraft fee[4] as provided in [Nicolet's] then-current Fee Schedule.

The then-current Fee Schedule provides:

> **NON-SUFFICIENT FUNDS (NSF) AND OVERDRAFT (OD) FEES\***
>
> Per item, nonsufficient funds\* $35.00
>
> Per item, overdraft\* $35.00
>
>  ….
>
> Maximum NSF/OD fees assessed per day (Retail Accounts) $140.00
>
>  ….
>
> \*NSF items may be created by check, in-person withdrawal, ATM withdrawal, or other electronic means.

¶6      According to Klimek, Nicolet impermissibly charged the second fee because, under the contract, "[e]ach merchant request for payment was for a single transaction[] and … should be subject to, at most, a single NSF Fee." Klimek additionally alleged that he understood the contract to mean that "each payment [was] a single item … capable at most of receiving a single [fee] (if Nicolet returned it or paid it)."

¶7      Nicolet filed a motion to dismiss the amended complaint for failure to state a claim. Relevant to this appeal, Nicolet argued that the contract permits

---

[4] Nicolet asserts that while the Deposit Account Terms and Conditions uses the term "overdraft fee," the term is used in this particular clause as a "catch-all" "to include fees charged when Nicolet denies a payment request due to insufficient funds" (i.e., an NSF fee). Klimek does not dispute this assertion.

Nicolet to charge a fee "when any item [is] *presented for payment* against insufficient funds," meaning that the second fee was allowed "even assuming … two payment requests are not separate 'items.'" In response, Klimek contended that an "item," as that term is used in the contract, "is the same 'item' even when it is reprocessed a second or third time, because an 'item' reasonably refers to an *account[ ]holder's* instruction for payment (no matter how many times that instruction is re-processed by a bank or merchant)." "At best," argued Klimek, "Nicolet's 'per item' promise is ambiguous" because the contract does not define "item," preventing the circuit court from granting Nicolet's motion to dismiss.

¶8      Following arguments by the parties, the circuit court orally granted Nicolet's motion to dismiss. The court concluded that the contract unambiguously entitled Nicolet "to charge a fee, in this case $35[,] … on each presentment." The court determined that the only reasonable interpretation of the contract language at issue is that each time an "item" is presented, "whether it's presented the first time or whether it comes back repeatedly, is an item presented for payment." Once the court ruled that the contract permitted the fee at issue, Klimek conceded that his implied covenant of good faith and fair dealing claim was "moot." The court then entered a written order dismissing Klimek's claims with prejudice.

¶9      Klimek now appeals.[5]

---

[5]  Klimek alleged a third claim under WIS. STAT. § 100.18 (2023-24) that the circuit court dismissed as untimely upon Nicolet's motion to dismiss. Klimek does not challenge the court's dismissal of the third claim on appeal.

All references to the Wisconsin Statutes are to the 2023-24 version.

**DISCUSSION**

¶10 "A motion to dismiss for failure to state a claim tests the legal sufficiency of the complaint." ***Data Key Partners v. Permira Advisers LLC***, 2014 WI 86, ¶19, 356 Wis. 2d 665, 849 N.W.2d 693 (citation omitted). When we review a motion to dismiss, the factual allegations in the complaint, and any reasonable inferences therefrom, are accepted as true for purposes of our review. ***Id.***, ¶¶18-19. "However, legal conclusions asserted in a complaint are not accepted, and legal conclusions are insufficient to withstand a motion to dismiss." ***Id.***, ¶18. Whether a complaint states a claim upon which relief can be granted is a question of law for our independent review. ***Id.***, ¶17.

¶11 This case turns on the interpretation of the parties' contract. "The primary goal in contract interpretation is to give effect to the parties' intentions." ***Seitzinger v. Community Health Network***, 2004 WI 28, ¶22, 270 Wis. 2d 1, 676 N.W.2d 426. "We ascertain the parties' intentions by looking to the language of the contract itself." ***Id.*** "Such language is to be interpreted consistent with what a reasonable person would understand the words to mean under the circumstances." ***Id.*** Moreover, we "consider the language of the contract as a whole, and analyze contract clauses in context, as they are reasonably understood." ***MS Real Est. Holdings, LLC v. Donald P. Fox Fam. Tr.***, 2014 WI App 84, ¶29, 356 Wis. 2d 307, 853 N.W.2d 627. "If a contract provision is unambiguous, meaning that it is susceptible of just one reasonable interpretation, we will construe it consistently with that unambiguous meaning." ***Buchholz v. Schmidt***, 2024 WI App 47, ¶24, 413 Wis. 2d 308, 11 N.W.3d 212. We review de novo a circuit court's contract interpretation, including whether the contract is ambiguous. ***Chapman v. B.C. Ziegler & Co.***, 2013 WI App 127, ¶2, 351 Wis. 2d 123, 839 N.W.2d 425.

¶12 To begin, Klimek does not allege that Nicolet is prohibited by federal or state law from charging multiple NSF fees on one "item." Klimek also concedes that merchants are legally allowed to present "two repeat submissions on the same returned transaction." However, Klimek argues that the circuit court erred by granting Nicolet's motion to dismiss his breach of contract claim because the contract authorized Nicolet to charge only one fee per "item" and the term "item" "refers to the account[ ]holder's single order or instruction for payment from his or her account—not subsequent reprocessing attempts between the merchant and the bank." Klimek further argues, in the alternative, that the contract is ambiguous because it does not define the term "item," and the contract can reasonably be interpreted to mean that a fee will be assessed upon an account holder's presentment for payment of an item, not a merchant's presentment of payment for an item. Klimek cites dozens of federal decisions allegedly in support of these arguments.

¶13 We agree with the circuit court's interpretation of the contract: it unambiguously permitted the second fee imposed in this case. To reiterate, the second paragraph of § 27 of the Deposit Account Terms and Conditions states that "[a]n insufficient balance or overdraft … and each item *presented for payment against insufficient available funds*" are each subject to a fee, consistent with the Fee Schedule. (Emphasis added.) As the circuit court determined, and as Nicolet argues on appeal,[6] the term "presented" dictates that the fee imposed is not

---

[6] Nicolet argues, in the alternative, that the second fee was permitted under the contract even if this court were not to consider the "each item presented for payment" language because § 27 of the Deposit Account Terms and Conditions also states that "[a]n insufficient balance or overdraft in your account … are each subject to an overdraft fee." According to Nicolet, this language is, by itself, dispositive because

(continued)

assessed on each "item," but it is imposed when the *request* for payment on an "item" is made on an account with insufficient funds. Stated differently, it is the demand for payment on an "item" against an account with insufficient funds that triggers the fee, not the nature of the item or whether the account holder previously presented the same item for payment to the merchant.

¶14 This conclusion is supported by the first paragraph of § 27 of the Deposit Account Terms and Conditions. *See MS Real Est. Holdings, LLC*, 356 Wis. 2d 307, ¶29 (stating that we "consider the language of the contract as a whole, and analyze contract clauses in context, as they are reasonably understood"). That paragraph provides that once an "item" is presented for payment, Nicolet "may determine whether or not your account contains sufficient available funds to pay an item at any time between the time the item is presented and [Nicolet's] return deadline." The paragraph continues, "If that determination reveals insufficient available funds to pay the item, [Nicolet] is not required to pay

---

> [t]here was "[a]n insufficient balance … in [Klimek's] account" when the merchant presented its first (denied) request for payment. There was an additional "insufficient balance or overdraft in [Klimek's] account"—in a different amount, due to intervening transactions affecting Klimek's balance—when the merchant later re-presented its payment request, and Klimek again lacked sufficient funds. Because an "insufficient balance or overdraft" are "*each*" subject to a fee under [§] 27, Klimek's two failures to keep sufficient funds in his account subjected him to two separate fees.

(Second, third, and fourth alterations in original.)

Klimek correctly observes, however, that under § 27 of the Deposit Account Terms and Conditions, the $35 fees outlined in the Fee Schedule may not be charged merely for having an overdrafted account if no item is presented for payment. While the Fee Schedule does permit a $5 "[c]ontinous overdraft" fee "per day after 5 days," neither party contends that this provision applies to the type of challenged fee imposed in this case. We therefore conclude that Nicolet was not entitled to dismissal of the amended complaint based upon this alternative argument.

the item and may return it unpaid." As Nicolet argues, "[e]ach such determination may result in a distinct 'insufficient balance or overdraft in [Klimek's] account' if Klimek repeatedly keeps insufficient funds in his account while permitting a merchant to look to the account for payment." Here, the merchant "presented" the "item" a second time for payment, Klimek still had an insufficient balance, and Nicolet could charge him a second fee pursuant to the Fee Schedule.

¶15    There is no other reasonable interpretation of the contract, and Klimek's arguments to the contrary are unavailing. First, the "[p]er item" language in the Fee Schedule does not create ambiguity or otherwise dictate a different construction of the contract as a whole. When read in conjunction with § 27 of the Deposit Account Terms and Conditions, the Fee Schedule simply provides that an NSF fee is $35 "[p]er item" and that an overdraft fee is $35 "[p]er item." This language means that whenever an "item" is "presented" for payment and the account lacks sufficient funds, Nicolet may charge a $35 fee on that item, so long as the total NSF and overdraft fees on all items do not exceed $140 "per day." *See **Blum v. 1st Auto & Cas. Ins.***, 2010 WI 78, ¶20, 326 Wis. 2d 729, 786 N.W.2d 78 (stating that contracts "are to be read as a whole" and, as a result, it may be "necessary to look beyond a single clause or sentence to capture the essence" of a contract so that it is not "made ambiguous by isolating a small part from the context of the whole" (citation omitted)). We agree with Nicolet that nothing in the Fee Schedule "exempted Klimek from paying the $35 fee if the item causing an insufficient balance or overdraft happened to have also caused a *different* insufficient balance or overdraft on an earlier day."

¶16    Second, an "item," as that term is used in the contract, cannot be understood to mean an account holder's "single order or instruction for payment," as Klimek contends. The word "single" is not used in § 27 of the Deposit Account

Terms and Conditions, and § 27 does not otherwise limit the number of times an "item" may be "presented" for payment. Indeed, Klimek concedes that a merchant is legally permitted to present "two repeat submissions on the same returned transaction." We would be adding language to § 27 if we were to interpret the term "item" as narrowly as Klimek. For these reasons, the contract's omission of a definition for the term "item" does not create ambiguity.

¶17 Third, we are not persuaded by the federal case law cited by Klimek.[7] Not only are the cases cited not binding on this court, *see Lomax v. Fiedler*, 204 Wis. 2d 196, 217, 554 N.W.2d 841 (Ct. App. 1996), but of the dozens of decisions cited by Klimek, he provides pinpoint citations to only a select few. Moreover, Klimek provides little to no context for how or why these courts reached their conclusions based on the specific contract language analyzed. This court is under no obligation to search through each of these cases to find legal and factual parallels to this case on Klimek's behalf. *See State v. Waste Mgmt. of Wis., Inc.*, 81 Wis. 2d 555, 564, 261 N.W.2d 147 (1978); *State v. Delebreau*, 2014 WI App 21, ¶17, 352 Wis. 2d 647, 843 N.W.2d 441 (stating that the court could reject a party's arguments for being "poorly developed and lack[ing] proper pinpoint case citations").

¶18 Furthermore, as far as this court can discern, not a single case cited by Klimek addresses contractual language identical to the language in the contract at issue here. *See, e.g.*, *Hartnett v. Washington Fed. Bank*, No. 21-888, 2021 WL

---

[7] We pause to note that Klimek improperly cites two unpublished opinions of this court issued before July 1, 2009, in violation of WIS. STAT. RULE 809.23(3)(b). We admonish counsel that future violations of the Rules of Appellate Procedure may result in sanctions. *See* WIS. STAT. RULE 809.83(2).

6494953, at *3 (W.D. Wash. Dec. 7, 2021) (interpreting contract language permitting a bank to charge an NSF fee "per item" if it refuses "to pay an item that … is drawn in an amount greater than the amount of funds then available for withdrawal"). As at least one federal court has articulated in the context of addressing a bank's contractual ability to charge "multiple retry fees," case law interpreting other contracts with language different from the contract before the court is of little help. *Besser v. Sunflower Bank, N.A.*, No. 21-cv-01577, 2024 WL 1436283, at *4 (D. Colo. Mar. 11, 2024) (stating that the cases cited by the parties are "of limited help in analyzing the language of *this* agreement" because "the language in these Account Documents is different from" the language analyzed in those cases). For this reason, we do not view Klimek's cited case law[8]—or the case law cited by Nicolet in response—as persuasive with respect to our analysis of the contract language at issue in this case.

¶19 In his reply brief, Klimek asserts that by not considering the nonbinding case law he has cited as persuasive, we "overlook[] that the common ambiguity presented by 'item' in all these contract clauses is controlling while the differences in the fee clauses are not." To the extent Klimek attempts to draw parallels between the language in the contracts in those cases and the contract language here, we deem that argument undeveloped for the reasons explained above. *See Waste Mgmt. of Wis., Inc.*, 81 Wis. 2d at 564; *Delebreau*, 352 Wis. 2d 647, ¶17.

---

[8] Our conclusion regarding the uncompelling and nonbinding case law cited by Klimek extends to two Wisconsin circuit court decisions referenced by Klimek that addressed motions to dismiss breach of contract claims related to NSF fees. Those cases did not involve the same language as the contract at issue, and we do not find them persuasive.

¶20     Fourth, Klimek fails to persuade us with his argument that because Nicolet has added language to its contract surrounding when it may charge NSF fees, "even Nicolet understands" that an "item" "does not become a new 'item' each time it is re-presented." However, as we have explained, whether the "item" or its presentment are new or not is irrelevant, at least for purposes of imposing overdraft and NSF fees for insufficient funds under the contract, because each presentment of the item against insufficient funds triggers the fee.

¶21     Lastly, the Federal Deposit Insurance Corporation (FDIC) regulatory guidance cited by Klimek both in the circuit court and on appeal is similarly unhelpful to interpreting the contract language at issue. To the extent FDIC guidance could be persuasive in interpreting a contract, the particular guidance cited by Klimek is not helpful to our analysis because it did not consider the contract language used here. Likewise, while the FDIC noted that it had previously "identified consumer harm when financial institutions charged multiple NSF fees for the re-presentment of unpaid transactions," it explained that the relevant terms in those agreements "were not clearly defined and disclosure forms did not explain that the same transaction might result in multiple NSF fees if re-presented." As we have explained, the contract unambiguously permitted the fee charged here.

¶22     In all, context is important, and we will not conclude that a contract is ambiguous based on one undefined term, when the meaning of that term and the contract as a whole is clear. *See MS Real Est. Holdings, LLC*, 356 Wis. 2d 307, ¶29. When the term "item" is considered in the context of the contract as a whole, it is subject to only one reasonable interpretation: it is the demand for payment on an item against an account with insufficient funds that triggers the fee, not the nature of the item or whether the same item was previously presented for payment.

Thus, the contract unambiguously permitted Nicolet to charge a second fee on the same "item" that was presented twice, and Nicolet did not breach the contract when it charged that fee.[9]  We therefore affirm the circuit court's decision granting Nicolet's motion to dismiss Klimek's claims.

*By the Court.*—Order affirmed.

This opinion will not be published.  *See* WIS. STAT. RULE 809.23(1)(b)5.

---

[9] Because the contract unambiguously permitted Nicolet to charge Klimek the second fee, Klimek's claim based on a violation of the covenant of good faith and fair dealing also fails. *See* ***Beidel v. Sideline Software, Inc.***, 2013 WI 56, ¶29, 348 Wis. 2d 360, 842 N.W.2d 240 ("A party may not … employ the good faith and fair dealing covenant to undo express terms of an agreement."); ***Super Valu Stores, Inc. v. D-Mart Food Stores, Inc.***, 146 Wis. 2d 568, 577, 431 N.W.2d 721 (Ct. App. 1988).